## Richmond

FRANK MAT LIPSCOMBE v. SECURITY INSURANCE COMPANY OF HARTFORD.

June 12, 1972.

Record No. 7819.

Present, I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*Edward W. Taylor* (*Hundley, Taylor & Glass*, on brief), for plaintiff in error.

*G. Kenneth Miller* (*Thomas H. Atkins; May, Garrett & Miller*, on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

Frank Mat Lipscombe filed in the trial court a motion for judgment against his uninsured motorist carrier, Security Insurance Company of Hartford. In the motion, Lipscombe sought to recover from Security $25,000, the amount of a judgment he had previously secured against James Elwood Brown, an uninsured motorist, for injuries sustained in an automobile collision. Code § 38.1-381(b).

Security tendered payment into court of $20,000, claiming that was the limit of its liability under its policy, and the amount so tendered was paid to Lipscombe. The trial court ruled that Security was liable for $20,000 only and denied Lipscombe any further recovery. We granted him a writ of error.

At the time of the collision in question, Lipscombe was the named insured in a "Family Combination Automobile Policy" issued by Security. The policy covered two vehicles which were separately listed, an Oldsmobile and a Rambler. Lipscombe was operating the Oldsmobile when he was injured.

The policy contains standard uninsured motorist provisions providing coverage of $20,000 "each person" and $30,000 "each accident." A separate, equal premium was charged for each of the two automobiles listed in the policy.

Lipscombe contends that he should be permitted to "stack," or combine, the uninsured motorist coverages on the two automobiles listed in the policy so as to provide total coverage of $40,000, enough to satisfy his $25,000 judgment. He bases his claim to "stack" upon an alleged ambiguity in the policy, the result of which, he says, is to make it unclear whether he is entitled to the benefit of one coverage or two. This ambiguity should be construed against Security, Lipscombe argues, and "stacking" should be required.

Security contends, on the other hand, that its policy is not ambiguous. It relies upon the language of the "Declarations" portion of its policy where it is provided that the "limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto." Security then quotes a clause of the uninsured motorist provisions where it is provided that the "limit of liability . . . stated in the declarations as applicable to 'each person' [$20,000] is the limit of the company's liability for all damages . . . sustained by one person as the result of any one accident." All this, Security says, fixes the limit of liability per person at $20,000. Thus, Security concludes, Lipscombe is entitled to coverage of only $20,000 and should not be permitted to "stack."

The same question presented by these contentions has been resolved today in *Cunningham* v. *Insurance Company of North America*, 213 Va. 72, 189 S.E.2d 832 (1972). In that case, we held that the named insured was permitted to "stack" the coverages provided by the uninsured motorist provisions of a policy separately

listing three automobiles owned by the insured. In so holding, we adopted the reasoning of the Supreme Court of Kansas in *Sturdy* v. *Allied Mutual Insurance Company*, 203 Kan. 783, 457 P.2d 34 (1969). *Sturdy* held that where a single policy insures the owner of two listed automobiles against loss from damages caused by an uninsured motorist and a separate, equal premium is charged for each vehicle, an ambiguity is created in the absence of "plain, unmistakable language" restricting the coverage to that applicable to a single vehicle. And the ambiguity is to be construed against the insurance company, with the result that the insured is entitled to double coverage for the double premium paid.

The holding in *Cunningham* and our embracement therein of *Sturdy* would conclude the question in this case except for an argument advanced by Security which was not made by the insurance carrier in *Cunningham*. Security goes back to our decision in *Surety Corporation* v. *Elder*, 204 Va. 192, 129 S.E.2d 651 (1963), where we permitted the insured to "stack" the medical payment coverages of two vehicles insured in the same policy.[1] An ambiguity was found to exist in the policy because a separate premium was charged for each vehicle and the policy contained a clause which provided that "when two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each."

Security states that although its policy contains a "two or more automobiles" clause, that clause is expressly made inapplicable to the uninsured motorist portion of its policy. From this, Security argues that it has eliminated from its uninsured motorist provisions the two-car, two-coverage concept which caused the ambiguity in *Elder* and has thereby "expressly excluded by clear and unequivocal language" any right to "stack" the uninsured motorist coverages.

We agree that the "two or more automobiles" clause has been excluded from the uninsured motorist provisions of Security's policy. But is this mere exclusion sufficient to prevent "stacking"? Resolution of this question requires a consideration of the special nature of uninsured motorist coverage.

Uninsured motorist coverage is designed to protect not vehicles, but persons, *i.e.*, the innocent victims of negligent uninsured motorists. A policy issued pursuant to the uninsured motorist statute, Code § 38.1-381(b), provides to a person who is the named insured a broad

---

[1] The same result was reached in *Farm Bureau Mut. Ins. Co.* v. *Wolfe*, 212 Va. 162, 183 S.E.2d 145 (1971).

reservoir of coverage. He is protected while occupying an insured vehicle *or otherwise*. An insured who is not the named insured is protected only while occupying an insured vehicle. *Insurance Company* v. *Perry, Adm'r*, 204 Va. 833, 134 S.E.2d 418 (1964). Thus, the emphasis is upon the status of an insured when injured, rather than upon vehicles, in determining whether coverage applies.

Where, as here, two vehicles are insured in the same policy and the named insured is injured while occupying one of the vehicles, it is clear that he is covered by the uninsured motorist provisions applicable to the occupied vehicle. But, is he not entitled to the coverage applicable to his other vehicle, upon which he has paid a full premium and as to which, at the time of his injury, he is in the "or otherwise" status? It is unclear from the policy whether he is so entitled, even with the "two or more automobiles" clause excluded. The *Sturdy* thesis, which we have adopted, is that it takes "plain, unmistakable language" to prevent "stacking" in this type case. However, Security's mere exclusion of the ambiguous clause did not inform Lipscombe that he was entitled to only one coverage regardless of what status he occupied when injured and regardless of the number of vehicles insured. *See Hilton* v. *Citizens Insurance Company of New Jersey*, 201 So.2d 904 (Fla. App. 1967).

So an ambiguity exists in the policy before us which, according to familiar principles, must be construed against Security. Lipscombe is, therefore, entitled to "stack" coverages to the extent necessary to satisfy his judgment.

This brings us to a subsidiary question raised by the assignments of error. Lipscombe, in his original action against the uninsured motorist, secured, as has been noted, a judgment for $25,000. Of that amount, $3,000 was for punitive damages. The question is whether Security is liable to Lipscombe for the punitive damage portion of the judgment. The trial court did not reach this question in view of its holding that Security was liable to Lipscombe for only $20,000.

Security contends that neither the uninsured motorist statute nor its policy requires it to pay the punitive damages. It argues that it would be against public policy to require insurance companies to pay punitive damages assessed against uninsured motorists because to do so would thwart the purpose of awarding such damages, *i.e.*, to discourage wrongdoing.

It is true that the uninsured motorist statute does not mention punitive damages as such. And it is also true that the uninsured motorist provisions of Security's policy state that the company is to pay only for damages "because of bodily injury, sickness or disease, including death resulting therefrom."

But the uninsured motorist statute, Code § 38.1-381(b), does provide that all automobile insurance policies issued in this state must contain "provisions undertaking to pay the insured *all sums* which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." (Emphasis added.) We think this language was intended to include punitive damages.

Lipscombe has a valid judgment which includes $3,000 in punitive damages. That amount is, accordingly, a *sum* which he was legally entitled to recover from the uninsured motorist and which under the statute he is entitled to recover from Security under its policy.

The uninsured motorist statute answers Security's argument that to require insurance companies to pay punitive damages in this type case would thwart the public purpose of discouraging wrongdoing. Code § 38.1-381(f) provides that any insurer paying a claim under uninsured motorist provisions shall be subrogated to the rights of the insured against the person "causing such injury, death or *damage*." (Emphasis added.) Thus, Security may pursue and place upon the uninsured motorist the burden of the punitive damages. Therefore, the requirement that Security pay Lipscombe for the punitive damage portion of his judgment does not contravene public policy.

For the reasons assigned, the judgment of the trial court denying recovery to Lipscombe beyond the $20,000 paid to him by Security will be reversed and final judgment will be entered here in his favor against Security for $5,000, the balance of his judgment against the uninsured motorist.

*Reversed and final judgment.*