## 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡

JOSEPHINE A. CUNNINGHAM, ADMINISTRATRIX WITH WILL ANNEXED OF THE ESTATE OF GEORGE O. CUNNINGHAM, JR., DECEASED v. INSURANCE COMPANY OF NORTH AMERICA AND MARYLAND CASUALTY COMPANY.

INSURANCE COMPANY OF NORTH AMERICA v. JOSEPHINE A. CUNNINGHAM, ADMINISTRATRIX WITH WILL ANNEXED OF THE ESTATE OF GEORGE O. CUNNINGHAM, JR., DECEASED.

June 12, 1972.

Record Nos. 7711 and 7712.

Present, Snead, C.J., I'Anson, Harrison, Cochran and Harman, JJ.

*Donald Neal Patten (Patten and Wornom,* on brief), for plaintiff in error in Record No. 7711.

*Phillips M. Dowding; James B. Sawyer, Jr. (Dowding & Thomas; James, Richardson and James,* on brief), for defendants in error in Record No. 7711.

*Phillips M. Dowding (Dowding & Thomas,* on brief), for plaintiff in error in Record No. 7712.

*Donald Neal Patten (Patten and Wornom,* on brief), for defendant in error in Record No. 7712.

HARRISON, J., delivered the opinion of the court.

This case involves a controversy between the judgment creditor of an uninsured motorist and two insurance companies as to which company is liable to the creditor and in what amount.

The facts are not in dispute. George O. Cunningham, Jr., an employee of the Virginia Department of Highways, was riding in a Ford automobile owned by the Department and driven by a fellow employee, Rawley D. Yeatts, when this vehicle was involved in an accident with another vehicle owned by Don M. Selvey, an uninsured motorist.

Cunningham was killed in the accident and his administratrix recovered a $40,000 judgment for his wrongful death against Selvey.

On the date of the accident the Insurance Company of North America (INA) had outstanding its liability policy issued to Cunningham with stated limits of liability for uninsured motorist coverage of $15,000 each person, $30,000 each accident, and which afforded uninsured motorist coverage on three automobiles owned by the decedent for which separate and equal premiums of $4 were paid.

Maryland Casualty Company (Maryland) had outstanding its single liability policy issued to the Commonwealth of Virginia, Department of Highways, which afforded uninsured motorist coverage to 4,368 state-owned vehicles which were not specifically listed on the uninsured motorist endorsement but for which separate and equal premiums of $4 were paid on each. This policy stated the limitation of liability as $15,000 each person and $30,000 each accident.

The personal representative of Cunningham's estate sought to recover the amount of her judgment from INA and Maryland. The court below held that each company was liable to the extent of $15,000 and entered judgments accordingly. The Cunningham estate and INA appealed.

We would observe here that the uninsured motorist coverage provided by the Maryland policy, covering the operation of the vehicle involved in the accident in which plaintiff's decedent, Cunningham, was a passenger, did provide the primary uninsured motorist coverage. *State Farm* v. *United Services A. A.*, 211 Va. 133, 176 S. E. 2d 327 (1970). And further, if the uninsured motorist coverage afforded by the Maryland policy is sufficient to satisfy the plaintiff's judgment, there is no liability under the INA policy which provided only excess uninsured motorist coverage.

Therefore, we consider whether the coverage provided by Maryland, the primary insurer, can be "stacked" so as to provide sufficient coverage to satisfy the Cunningham judgment. If not, can the coverage provided by INA be "stacked"?

INA argues that the Maryland policy covered not only the vehicle in which Cunningham was riding, but 4,367 other vehicles for which a separate uninsured motorist premium was paid for each, and that Maryland is liable for the full amount of plaintiff's judgment. It cites in support of its contention *Bryant* v. *State Farm Mutual*, 205 Va. 897, 140 S. E. 2d 817 (1965), *Surety Corporation* v. *Elder*, 204 Va. 192, 129 S. E. 2d 651 (1963) and *Farm Bureau Mut. Ins. Co.* v. *Wolfe*, 212 Va. 162, 183 S. E. 2d 145 (1971).

Maryland admits it provides the primary uninsured motorist coverage and says that the trial court correctly fixed its liability at $15,000, that being the uninsured motorist coverage available to plaintiff's decedent as an occupier of one of the vehicles insured by Maryland for the Virginia Department of Highways. It further argues that having paid the amount due by virtue of one full uninsured motorist coverage, it has met its responsibility, and that the remaining portion of the plaintiff's verdict should be paid by INA.

Maryland points out that to hold otherwise would mean that for a premium of $4 paid for each vehicle insured under its policy issued to the Department of Highways, each vehicle would have had a bodily injury limit for each person of $65,520,000 and total limits for each accident of $131,040,000. It contends that the broad coverage afforded insureds of the first class was not intended to extend to

insureds of the second class such as plaintiff's intestate. INA says that this position is erroneous and untenable and that once a person becomes an "insured" he is entitled to all the coverage provided by the policy regardless of whether he becomes an insured by virtue of being named in the policy or by virtue of being an occupant of the insured vehicle.

The distinction between a named insured and an insured is not as tenuous as INA suggests. We feel that it does exist and has validity. Code § 38.1-381 (c) recognizes the distinction, for in defining the term "insured" it provides:

> "[T]he named insured and, while resident of the same household, the spouse of any such named insured, and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above . . . ."

In *Insurance Company* v. *Perry, Adm'r*, 204 Va. 833, 134 S. E. 2d 418 (1964) we expressly held that in our opinion the legislature, in enacting the uninsured motorist statute, intended to create two classes of insured persons with different benefits accruing to each class. In *Perry* a police officer for the City of Norfolk was killed by an uninsured motor vehicle while standing 150 feet away from the insured city police cruiser which he had been occupying. The cruiser and numerous other city vehicles were covered by an insurance policy issued to the City of Norfolk, and the policy contained an uninsured motorist endorsement. The question was whether the policeman at the time of the accident was an insured under the provisions of the policy when read in the light of the uninsured motorist statute. We held that he was not an insured, and in the course of our opinion said:

> "Nor can we agree that Peterson, because of his status as an employee of the city, was the named insured, either under the wording of the policy or the language of the statute. The policy before us clearly states that the city of Norfolk is the named insured. The court cannot substitute the name of each of the many employees of the city in place of that of the city as the named insured and thus stretch the coverage of the policy to include each such em-

ployee and all of the members of his household specified in the statute. To do so would be to rewrite the policy, to make a new contract for the parties and to distort the meaning of the statute. This would extend the benefits granted and broaden the risks imposed to a degree obviously never contemplated by the parties to the insurance contract nor intended by the legislature." 204 Va. at 836-37, 134 S. E. 2d at 420.

Further support for the argument that here we deal with two classes of insureds, with different benefits for each class, is found in *Sturdy* v. *Allied Mutual Insurance Company*, 203 Kan. 783, 791, 457 P. 2d 34, 40 (1969):

"Further exploring the policy we find it defines two separate classes of persons as being 'insured' under it: First, the named insured (and any relative); and second, any other person while occupying an insured automobile. To be insured, the latter must actually be occupants of an insured vehicle. Their coverage is tied to and limited to actual occupancy of a particular automobile. This is not true of the named insured. His coverage, with one important exception, is not tied to or limited by occupancy of an automobile . . . .

\* \* \* \* \*

"Thus we see that the policy provides the named insured with two kinds of coverage: While he is in his insured automobile, and wherever else he may happen to be when he suffers bodily injury due to an uninsured motorist. This latter constitutes a broad reservoir of coverage."

In the instant case the named insured was the Commonwealth of Virginia, Department of Highways. To paraphrase what was said in *Perry*, "the court cannot substitute the name of each of the many employees of the Virginia Department of Highways in place of that of the Department as the named insured, and thus stretch the coverage of the policy to include each such employee and all of the members of his or her household specified in the statute". The uninsured motorist endorsement of Maryland's policy, read in light of the statute, insures the Highway Department against damage to its property resulting from the negligence of an uninsured motorist, and those who occupy its insured vehicles are insured for damages for

bodily injury or death, resulting from the negligence of such uninsured motorist.

It is conceded that Cunningham was "occupying" a state vehicle covered by the Maryland policy when he was killed. He was not the named insured in the policy and therefore occupied the status of an insured of the second class, as defined by statute. As such he is entitled to the uninsured motorist coverage provided the specific vehicle he was using or in which he was riding as a passenger or guest. He cannot pyramid the uninsured motorist coverage on the 4,367 other highway vehicles.

A further distinction between the type of coverage provided a named insured in a policy and other insureds exists because those of the second class do not buy the policy. In the instant case Cunningham did not buy the policy. He did not pay Maryland one premium or any multiple premiums. This was done by the named insured to provide the minimum coverage required by the laws of Virginia. The Commonwealth of Virginia did not intend thereby to provide multiple coverage to every permissive user of its Department of Highway vehicles. It purchased the broad coverage for the Department and the statutory coverage for the permissive occupants of its vehicles.

The purpose of uninsured motorist insurance is to provide compensation to the innocent victim of the uninsured motorist. The named insured in a policy receives coverage, and a contract benefit, for which he has paid a consideration. He seeks indemnity based on the payment of that premium and where he has paid separate premiums he is entitled to the additional coverages. However, this argument and reasoning does not apply to a permissive user of a vehicle who pays no premium and does not receive the broader uninsured motorist coverage of a named insured.

It is our conclusion that the maximum liability of Maryland in this case is $15,000, that being the uninsured motorist coverage available to Cunningham who was an "insured" by virtue of being a permissive occupant of a Highway Department vehicle at the time he was killed.

■ We now consider if it is permissible to allow the Cunningham estate to "stack" the three INA coverages.

The doctrine of multiple recovery, or pyramiding coverage, has been the subject of previous opinions by this court. In *Surety Corporation* v. *Elder, supra,* we considered the medical payments cover-

age of an automobile liability policy and held that it applied separately for each of the two automobiles listed on the policy for which a separate premium was paid, thereby affording the assured double coverage for medical benefits. There the plaintiff's husband was the named insured in an automobile insurance policy containing a medical payments clause with a $1,000 limit applicable to each person. The policy insured two automobiles owned by the insured and separate premiums for medical payments were paid on each. The insurance company contended that the $1,000 limitation governed. We disagreed and held that if the insured had carried a separate policy upon each vehicle he would have been entitled to receive $1,000 under each contract, and that the fact that the two coverages were combined in one policy did not compel us to reach a different result. *See also Farm Bureau Mut. Ins. Co.* v. *Wolfe, supra.*

In *Bryant* v. *State Farm Mutual, supra,* the plaintiff was the insured under a policy issued by State Farm to his father which covered the father and "any other person while occupying the insured motor vehicle". The plaintiff was also a named insured in a liability policy issued to him by State Farm. Each policy had a limit of $10,000 for each person insured. The plaintiff recovered a judgment against an uninsured motorist and sought to recover under the provisions of both policies. The company contended that the "other insurance" clause in its policy limited the insured's coverage to the amount by which the policy's applicable limit exceeded the sum of the applicable limits of other insurance available to him. We held the clause invalid because it conflicted with Code § 38.1-381 (b) which requires that every policy contain an endorsement binding the insurer to pay, within the statutory limit, all sums which the insured shall be legally entitled to recover from the owner or operator of the uninsured vehicle. Recovery was permitted under both policies.

The question of multiple coverage in an uninsured motorist situation when two or more automobiles are included in the same policy was considered by the Supreme Court of Kansas in *Sturdy* v. *Allied Mutual Insurance Company*, 203 Kan. 783, 457 P. 2d 34 (1969). In that case the plaintiff police officer, while riding a motorcycle, was injured by an uninsured motorist. He held a policy of liability insurance, insuring his two private automobiles, with uninsured motorist coverage. Both vehicles were separately listed and separate and equal premiums were charged on each. The court concluded that where two premiums were paid for two vehicles and the policy did

not state plainly, explicitly and unmistakably just what the coverage was, the "other coverage" clause meant insurance in addition to that afforded by the policy under consideration. It denied defendant's contention that coverage on car 1 and car 2 constituted other coverage between the two, so as to limit or prorate its total liability. The court further held:

"Defendant here chose to issue coverage on two separate automobiles and to accept a premium for each. Under these facts, clauses designed to prevent the paying of a disproportionate amount of a loss which is properly shared with another insurance company should not be distorted to reduce whatever amount is otherwise due the insured under his policy.

\* \* \* \* \*

"If, in paying one premium for a single automobile, coverage is purchased while occupying the insured automobile along with the coverage not tied to that automobile, the question might well be asked, What coverage is intended by payment of an equal premium for a second automobile? Does it also include the broad reservoir of coverage secured under the first premium for the first automobile, and if not, why?

\* \* \* \* \*

"When we pay a double premium we expect double coverage. This is certainly not unreasonable but, to the contrary, is in accord with general principles of indemnity that amounts of premiums are based on amounts of liability. Defendant argues that what plaintiff is seeking amounts to pyramiding coverage but nothing is said about pyramiding the premiums which effectuate the coverages." 203 Kan. at 789, 791-92, 793, 457 P. 2d at 39, 41, 42.

The views expressed in *Sturdy* are consistent with our holding in *Elder* and *Wolfe*, and we believe they are sound.

We decide that the Cunningham estate can accumulate the three INA uninsured motorist coverages under the policy held by the decedent who was the named insured therein.

Accordingly, the judgment of the trial court, insofar as it ordered a recovery from Maryland Casualty Company in the amount of $15,000, is affirmed. The judgment of the trial court awarding the recovery against the Insurance Company of North America in the

amount of $15,000 will be reversed, set aside and vacated. Final judgment will be entered here in favor of Josephine A. Cunningham, Administratrix with will annexed of the estate of George O. Cunningham, Jr., deceased, against the Insurance Company of North America in the amount of $25,000.

*Affirmed in part, reversed in part, and final judgment.*