Dudley J. EMICK, Jr., Administrator of
the Estate of Jack Wesley Minnich,
et al., Plaintiffs,

v.

DAIRYLAND INSURANCE COMPANY
and Middlesex Mutual Insurance
Company, Defendants.

Civ. A. No. 74–C–14–R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Oct. 31, 1974.

James M. Roe, Dudley J. Emick, Jr.,
Carter, Roe, Emick & Honts, Fincastle,
Va., T. T. Lawson, Woods, Rogers, Muse,
Walker & Thornton, Roanoke, Va., for
plaintiffs.

Frank N. Cowan, Gordon, Cowan, Gar-
ner & Dodson, Richmond, Va., for
Dairyland.

S. D. Roberts Moore, Gentry, Locke,
Rakes & Moore, Roanoke, Va., for Mid-
dlesex.

### OPINION and JUDGMENT

DALTON, District Judge.

This case involves the liability of two
insurance companies for injuries to
plaintiff-administrator's deceased result-
ing from an automobile accident on May
11, 1973 in Roanoke County, Virginia.
That accident claimed the lives of Jack
Wesley Minnich and David Allen Ash-
well. The accident occurred when the
car driven by Ashwell at a speed in ex-
cess of 90 miles per hour skidded out of
control, jumped a raised median strip,
crossed into the opposite traffic lane,
and collided with the vehicle driven by
Minnich. The administrator of the es-
tate of Jack Wesley Minnich subsequent-
ly brought an action in the Circuit
Court for the County of Roanoke

against the estate of David Allen Ashwell. The Circuit Court, without a jury, awarded the plaintiff administrator by order dated January 18, 1974 recovery in the amount of $75,507.50 with interest thereon from May 11, 1973 plus costs. The plaintiff-administrator then filed suit in this court against the defendant insurance companies for satisfaction of the state court judgment. Plaintiff is a citizen of Virginia; the defendant Dairyland Insurance Company is a corporation incorporated under the laws of Wisconsin; defendant Middlesex Mutual Insurance Company is a corporation incorporated under the laws of the Commonwealth of Massachusetts. As the matter in controversy exceeds $10,000 and diversity of citizenship exists, jurisdiction vests in this court pursuant to 28 U.S.C. § 1332.

The liability of Dairyland Insurance Company (Dairyland) is predicated upon an insurance policy, effective at the time of the accident, under which Dairyland agreed to indemnify up to $20,000 any person operating with the permission of the owner a certain 1970 two-door Chevrolet sedan. This automobile was owned by Sandra N. Wood and was the automobile Ashwell was driving at the time of the accident.

The liability of Middlesex Mutual Insurance Company (Middlesex) is predicated upon an insurance policy, effective at the time of the accident, under which Middlesex agreed to indemnify any relative who was a resident member of the household of George W. Lawhorn for any liability incurred while operating a non-owned vehicle with the permission of the owner.[1] Plaintiff-administrator contended that David Ashwell was a relative of Mr. Lawhorn residing in his household.

This case was tried before this court on June 4, 1974. The questions of whether Ashwell had permission to drive Sandra Wood's vehicle at the time and place of the accident and whether Ashwell was a member of the Lawhorn household at the time of the accident were submitted to a jury which returned a special verdict affirmatively answering both questions.[2] This court therefore finds that the insurance policies issued by Dairyland and Middlesex covered David Allen Ashwell at the time and place of the accident and are therefore available to the plaintiff to satisfy his judgment against Ashwell's estate.

Because the limits of liability under the Dairyland policy are clear and uncontested, this court accordingly enters judgment in favor of the plaintiff-administrator against Dairyland in the amount of $20,000 with interest from May 11, 1973. The only remaining issue in this case is the extent of Middlesex's liability under the terms of its policy.

The Middlesex policy covers two automobiles owned by George W. Lawhorn,

---

1. The coverage of the Middlesex policy with respect to a non-owned vehicle read as follows:

"Part I—LIABILITY

Persons Insured: The following are insureds under Part I:

.    .    .    .    .

(b) with respect to a non-owned automobile,
(1) the named insured,
(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and
(3) .   .   .

2. The jury returned the following special verdict form:

As to Dairyland, you will answer the following question:

1. Did David Allen Ashwell have permission, express or implied, to drive the Wood vehicle at the time and place of the accident? Answer: YES

As to Middlesex, you will please answer the following questions:

1. Did David Allen Ashwell have permission, express or implied, to drive the Wood vehicle at the time and place of the accident? Answer: YES

2. Was the driver, David Allen Ashwell, a member of the Lawhorn household at the time of the accident? Answer: YES

This 4th day of June, 1974

/s/ Houston M. Becker

Foreman

neither of which was involved in the accident. The policy provides coverage to an insured up to $25,000 for bodily injury liability to each person injured.[3]

3. The Middlesex policy was in the following form:

---

━━━━━━━━━━━━━━ **FAMILY COMBINATION AUTOMOBILE POLICY** ━━━━━━━━━━━━━━

MUTUAL COMPANY
PARTICIPATING
NONASSESSABLE POLICY

**No. BMO TO 67 58**

### MIDDLESEX MUTUAL INSURANCE COMPANY
· CONCORD    MASSACHUSETTS

**DECLARATIONS**    *Established 1826*

**Item 1. Named Insured and Address:**    (No., Street, Town or City  County, State)

George Marshall Lawhorn
Box 138
Thaxton, Virginia

PARKER-STANLEY
INSURANCE AGENCY, INC.
P. O. BOX 1 — PHONE 586 3229
201 SOUTH St.   BEDFORD, VA.

**Item 2. Policy Period:** (Mo. Day Yr.)   ( 6 Months)
From    2-3-73    to    8-3-73
12:01 A.M., standard time at the address of the named insured as stated herein.

Ren. BMOTO6008        Dividend $

**Agent.**  Parker-Stanley Insurance Agency, Inc.
**Town.**  P.O. Box 1
**State.**  Bedford, Virginia

**Occupation of** the named insured IS *IF MARRIED WOMAN, GIVE HUSBAND S OCCUPATION OR BUSINESS (ENTER BELOW)*

**Item 3.** The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| | COVERAGES | LIMITS OF LIABILITY | | CAR 1  PREMIUMS  CAR 2 | |
|---|---|---|---|---|---|
| A | Bodily Injury Liability | 25 | thousand dollars each person | $ 18.00 | $ 18.00 |
| | | 50 | thousand dollars each occurrence | | |
| B | Property Damage Liability | 5 | thousand dollars each occurrence | $ 11.00 | $ 11.00 |
| C | Medical Payments | 1000 | dollars each person | $ 3.00 | $ 3.00 |
| D | (1) Comprehensive (excluding Collision) | $ ACV | Actual Cash Value* | | |
| | (2) Personal Effects | $ 100 | | $ 14.00 | $ 10.00 |
| E | Collision | Actual Cash Value less | | $ 22.00 | $ 22.00 |
| | | $ 100 | deductible | | |
| F | Fire, Lightning and Transportation | $ | | $ | $ |
| G | Theft | $ | | $ | $ |
| H | Combined Additional Coverage | $ | | $ | $ |
| I | Towing and Labor Costs | $ 25 | per disablement | $ | $ |
| J | Uninsured Motorists | 20 | thousand dollars each person | †$ 2.00 | $ 2.00 |
| | | 40 | thousand dollars each accident | ††$ | All "owned automobiles" |

Form numbers of endorsements attached to policy at issue    $
GU4208

† ENTER PREMIUM ($) HERE WHEN RATED ON "PER CAR" BASIS
†† ENTER PREMIUM HERE WHEN RATED ON "PER INDIVIDUAL" BASIS
* STRIKE OUT "ACTUAL CASH VALUE" AND INSERT AMOUNT IF POLICY IS WRITTEN ON STATED AMOUNT BASIS.

Total Car 1 - Car 2 $    70.00    $ 66.00
Total Premium $    136.00

**Item 4.** Description of owned automobile or trailer

| Auto | Year of Model | Trade Name | Body Type; Model | H.P. | Cu. Inch Displ | No of Cyl. | Identification Number (1) Serial Number (S) Motor Number (M) | F.O.B. List Price or Delivered Price at Factory | Purchased Month,Year  New or Used | Class & Rating Symbol |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1972 | Chevrolet 2 Dr. Impala | | | | | 1M47R2Y104278 | | 4-2 | 1B-20% |
| 2 | 1972 | Chevrolet 3/4 ton pickup | | | | | CCE332B151204 | $3547 | | 1B-20% |

**Item 5.** Loss Payee: Any loss under Part III is payable as interest may appear to the named insured and (NAME AND ADDRESS—ENTER BELOW)

First National Exchange Bank, Bedford, Virginia

**Item 6.** The owned automobile will be principally garaged in the town or city designated in Item 1 above, unless otherwise stated herein. (ENTER BELOW)

**Item 7.**

| Premium Payment Schedule | Date Payment Due | Total—A, B, C & I* | Comp., Coll., Other | Amount of Payment |
|---|---|---|---|---|
| In consideration of the issuance of this policy on the installment basis the named insured hereby agrees to pay the premium to the company as shown. *Include installment charge. | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | Totals | $ | $ | $ |

| Car | Terr | Rating Classif. | Factor | | Discounts | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Liab | Phys. | 2 car | Comp. | Dr Tr | |
| 1 | 17 17 | | | | | | | |
| 2 | | | | | | | | |

Parker-Stanley Insurance Agency, Inc.
#45543
*[signature] J. A. Stanley*
Agent

CKP 6011 X C
(Rev. 11-63)

This coverage extends to an insured while driving a non-owned automobile.[4] Middlesex assessed a separate premium of $18.00 for this coverage for each of the two insured automobiles. The precise question presented then to this court is whether under the terms of this policy the $25,000 limit of liability for bodily injuries to a person should be "stacked"; that is, whether the $25,000 limitation for each person applies with respect to each of the two cars insured for a total liability of $50,000 for the injuries received by the plaintiff's deceased. This resolution of this question involves the construction of the two following clauses appearing in the Middlesex policy:

"Part I—LIABILITY

Limits of Liability: The limit of bodily injury liability stated in the declarations as applicable to each person is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person as the result of any one occurrence; the limit of such liability stated in the declarations as applicable to 'each occurrence' is, subject to the above provision respecting each person, the total limit of the company's liability for all such damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence." [Herein referred to as the "liability clause"]

"CONDITIONS

. . . . . .

4. Two or More Automobiles—Parts I, II and III: When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each . . ." [Herein referred to as the "separability clause"]

Plaintiff asserts that the separability clause requires the payment of the $25,000 amount prescribed by the liability clause for each car insured under the policy. In other words, Middlesex's liability should be "stacked" as if there were a separate policy in effect on each car insured. Alternatively, plaintiff argues that when read together, the liability clause and the separability clause creates an ambiguity in the policy; and because of this ambiguity, this court must strictly construe the policy against Middlesex, liberally construe the policy in favor of the plaintiff, and "stack" liability to $50,000.

Because the jurisdiction of this court rests upon diversity of citizenship, 28 U.S.C. § 1332, the issue at bar is governed by the law of the forum State of Virginia. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The Virginia Supreme Court has not ruled on the precise issue before this court. The Virginia Supreme Court has had occasion, however, to construe the language of insurance policies sufficiently similar to that in the case *sub judice* to confidently guide this court in making its *Erie*-required forecast of Virginia law. *See* Surety and Insurance Corp. v. Elder, 204 Va. 192, 129 S.E.2d 651 (1963); Virginia Farm Bureau Mutual Ins. Co. v. Wolfe, 212 Va. 162, 183 S.E.2d 145 (1971); Lipscombe v. Security Insurance Co. of Hartford, 213 Va. 81, 189 S.E.2d 320 (1972); Cunningham v. Insurance Co. of North America, 213 Va. 72, 189 S.E.2d 832 (1972).

The insurance policy construed in *Elder, supra* covered two automobiles owned by the husband of the plaintiff. Under the terms of its policy, the company agreed to reimburse an insured up to $1,000 for medical expenses incurred in an accident. A separate premium was paid on each insured automobile for this coverage. The sole question before the court was whether the medical payments limitation of $1,000 should be "stacked" for each car insured, as the plaintiff contended, or whether the maximum cov-

4. See Footnote 1.

erage under the policy was $1,000 to each person for any one accident, as the insurance company claimed. As in the instant case, the decision turned on the construction of a liability clause and a separability clause which contained language almost identical to that contained in the Middlesex policy.[5] The court held that the policy was ambiguous in its terms and was susceptible to two conflicting constructions. *Elder*, 129 S.E. 2d at 655. Reasoning that it should therefore construe the policy strictly against the insurer and liberally in favor of the insured, the court held that the insurance company's liability under the medical payments provision was $1,000 to each person for each car insured. *Elder*, 129 S.E.2d at 655.[6]

On slightly different facts,[7] the court reaffirmed the reasoning and holding of *Elder, supra* in Virginia Farm Bureau Mutual Ins. Co. v. Wolfe, *supra*. Expanding upon *Elder, supra*, the court in

*Wolfe* stated a further justification for the result reached:

If the company had intended to limit the medical payment coverage to one automobile, and thereby remove the conflict between the limitation of liability and separability clauses, it could have done so by the use of clear and unambiguous language. See Hansen v. Liberty Mutual Fire Insurance Company, 116 Ga.App. 528, 157 S.E.2d 768 (1967), where the policy stated in plain and unambiguous language that the $1,000 limit for each person is the limit of the company's liability for all medical expenses insured by each person, regardless of the number of automobiles to which the policy applies." 183 S.E.2d at 147.

A year later, the Virginia Supreme Court extended the reasoning of *Elder* and *Wolfe* to uninsured motorists coverage in Lipscombe v. Security Insurance Co. of Hartford,[8] *supra* and Cunningham

5. The policy in *Elder*, 129 S.E.2d at 652–653, provided:
"PART II—*Expenses For Medical Services*

. . . . .

Limit of Liability: The limit of liability for medical payments stated in the declarations as applicable to 'each person' is the limit of the Company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury as the result of any one accident.

. . . . .

*Conditions*

. . . . .

4. Two or More Automobiles: Parts I, II and III when two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, . . . "

6. The court explained in *Lipscombe, supra* the basis of its decision in *Elder* as follows:
"An ambiguity was found to exist in the policy because a separate premium was charged for each vehicle and the policy contained a [separability] clause . . . " *Lipscombe*, 18 S.E.2d at 322.

7. While *Elder, supra* involved a plaintiff who was injured in an accident not involving either of the automobiles insured under the policy, the plaintiff in *Wolfe, supra* was injured in one of the three vehicles insured under the policy in question. Furthermore, in addition to the liability and separability clauses contained in the policy in *Elder*, the

policy in *Wolfe* contained the following language, not found in the *Elder* policy:
" 'Part II—*Expenses for Medical Services*'
'Coverage C—Medical Payments:
To pay all reasonable expenses incurred . . . from the date of the accident for necessary medical . . . services:
Division 1. To or for the named insured . . . who sustains bodily injury . . . caused by the accident,
(a) while occupying the owned automobile,
(b) while occupying a non-owned automobile . . . , or
(c) through being struck by an automobile.' "

The insurance company in *Wolfe* argued that even if the three insured automobiles were each considered covered under a separate policy, as plaintiff contended must be done under the separability clause, only the policy covering the insured car involved in the accident would apply since there was no allegation that injuries occurred "through being struck by an automobile". Brief for Appellant at 7–10, *Wolfe, supra*. The court apparently discounted this argument in that "this difference does not significantly affect the broad coverage afforded". *Wolfe*, 183 S.E.2d at 147.

8. At the time of the collision in question, Lipscombe was the named insured in a "Family Combination Automobile Policy" issued by Security. The policy covered two vehicles which were separately listed, an Olds-

v. Insurance Co. of North America.[9] The court stated in *Lipscombe*, 189 S.E. 2d at 322:

".  .  . [W]e adopt the reasoning of the Supreme Court of Kansas in *Sturdy v. Allied Mutual Insurance Company*, 203 Kan. 783, 457 P.2d 34 (1969). *Sturdy* held that where a single policy insures the owner of two listed automobiles against loss from damages caused by an uninsured motorist and a separate, equal premium is charged for each vehicle, an ambiguity is created in the absence of 'plain, unmistakable language' restricting the coverage to that applicable to a single vehicle. And the ambiguity is to be construed against the insurance company, with the result that the insured is entitled to double coverage for the double premium paid." [10]

In *Cunningham, supra*, the court further quoted from the language of *Sturdy, supra*:

" 'When we pay a double premium we expect double coverage. This is certainly not unreasonable but, to the contrary, is in accord with general principles of indemnity that amounts of premiums are based on amounts of liability. Defendant argues that what plaintiff is seeking amounts to pyra-miding coverage but nothing is said about pyramiding the premiums which effectuate the coveages.' 203 Kan. at 789, 791-792, 793, 457 P.2d at 39, 41, 42." 189 S.E.2d at 837.

Because the liability and separability clauses and the question with respect to the present policy/are substantially the same as those considered in the Virginia cases, the only issue is whether the principle of "stacking", approved in those cases with respect to liability for medical payments and uninsured motorists coverage, should be extended to liability for bodily injury.

Middlesex asserts that liability for medical payments should be distinguished from liability for bodily injury for purposes of "stacking" and urges this court not to extend the rationale of *Elder* and *Wolfe* to the instant case. In support of its contention, Middlesex cites the case of *Allstate Insurance Co. v. Mole*, 414 F.2d 204 (5th Cir. 1969).[11] In *Mole, supra*, the Court of Appeals was required to decide whether Florida law required "stacking" of bodily injury insurance under an insurance policy containing the same liability and separability clauses as those in the Middlesex policy. The Florida Supreme Court had not ruled on that precise issue but had held that "stacking" was permissible with re-

mobile and a Rambler. Lipscombe was operating the Oldsmobile when he was injured. The policy contained standard uninsured motorist provisions providing coverage of $20,000 "each person" and $30,000 "each accident". A separate, equal premium was assessed for each of the two automobiles listed in the policy. In a previous state court action, Lipscombe had been awarded a $25,000 judgment against an uninsured motorist for injuries sustained in the automobile collision. Lipscombe then sought to recover this amount from Security, which denied any liability above $20,000. *Lipscombe*, 189 S.E.2d at 321.

9. Cunningham was killed in an accident and his administratrix recovered a $40,000 judgment for his wrongful death against an uninsured motorist. On the date of the accident, Insurance Co. of North America (INA) has outstanding a liability policy issued to Cunningham with stated limits for uninsured

motorist coverage of $15,000 each person, $30,000 each accident, and which afforded uninsured motorist coverage on three automobiles owned by Cunningham for which separate and equal premiums were paid. *Cunningham*, 189 S.E.2d at 833.

10. The insurance policy in *Cunningham* contained the same separability clause as in the Middlesex policy. The policy in *Lipscombe* contained a separability clause that expressly made it inapplicable to the uninsured motorist portion of its policy. The court in *Lipscombe* nevertheless held the uninsured motorist provision ambiguous.

11. Though Middlesex has cited numerous other cases, only *Mole, supra* involved whether to apply principle of "stacking" to bodily injury liability for a non-owned vehicle after the principle had been approved under applicable state law with respect to medical payments and uninsured motorist coverage.

spect to medical payments coverage and uninsured motorist liability. *See* Government Employees Insurance Company v. Sweet, Fla.Dist.Ct.App.1966, 186 So. 2d 95 (1966); Sellers v. United States Fidelity and Guaranty Co., Fla.1966, 185 So.2d 689 (1966); Travelers Indemnity Co. v. Powell, Fla.Dist.Ct.App.1968, 206 So.2d 244 (1968). The Court of Appeals distinguished those cases however and held that with respect to bodily injury liability insurance, the liability and separability clauses when read together did not create an ambiguity and that under Florida law, "stacking" in this context would not be sanctioned. *Mole*, 414 F.2d at 207–208.

In reaching its decision, the court in *Mole, supra* rested its decision on two justifications. The court in the first instance relied on language in a Florida case which, while permitting "stacking" of medical payments coverage, specifically distinguished that type of insurance from bodily injury liability (public liability) insurance.[12] The court then cited a number of differences in the nature of bodily injury insurance and medical payments and uninsured motorist coverage under the policy.[13]

As neither the particular insurance policy nor the same governing law controls in this case, this court makes no judgment as to the correctness of the decision reached in *Mole, supra.*[14] With respect to the Middlesex insurance policy and the state of Virginia law on this issue, this court finds the arguments in *Mole, supra* unpersuasive.

■ The Virginia cases that have considered whether an insurance policy is so ambiguous as to justify "stacking" have focused on the following criteria:

(1) Whether the policy contained a separability clause that required that the terms of the policy be applied separately to each automobile insured under the policy.

(2) Whether a separate and equal premium was paid for the particular type of coverage for each automobile insured under the policy.

12. The court relied in *Mole* on the following statement in the Florida case of *Sweet, supra*, cited in *Mole, supra* at 206:
   "The medical payments coverage applied to all medical expenses of the named insured while occupying or through being struck by an automobile, except an automobile owned by or furnished for the regular use of the named insured which is not described in the policy. This is the feature which makes medical payments insurance coverage an entirely different type of insurance than public liability or property damage insurance where coverage is attributed to the vehicle causing the damage. Medical payment provisions are closely akin to a personal accident policy; recovery is completely independent of liability on the part of the insured . . ."

13. The court states in *Mole, supra* at 207: ·
   "In the instant case an entirely different situation obtains. Non-owned vehicle coverage by definition cannot be derived from the coverage on a particular owned vehicle. It is separate insurance and, moreover, does not apply if one of the owned vehicles gives rise to the accident. The idea that a policy holder could increase his non-owned vehicle coverage by adding owned vehicles to his policy is a concept this court cannot comprehend. The policy holder is already covered while driving all non-owned vehicles, regardless of the number of owned vehicles named in the policy, and pays no additional premium for non-owned vehicle coverage if an additional car is added to the policy. Furthermore, the formula applied in *Sweet* and *Sellers* requires that the stated policy limit for particular coverage be multiplied by the number of vehicles covered. If this formula were strictly applied to non-owned vehicle coverage, we would reach the absurd result that the stated liability would be multiplied by the total number of non-owned vehicles the insured potentially could drive, a result we do not think the Florida courts intended or would sanction."

14. To the extent that the owner in *Mole* did not pay an additional premium for non-owned vehicle coverage for an additional insured car, the policy *sub judice* is distinguishable. A premium of $18.00 was paid for each of the two cars insured. Assuming part of that premium is attributable to non-vehicle coverage, the premium on the additional insured cars should be less than $18.-00 if an additional premium for non-vehicle coverage were not assessed.

**1032**

(3) Whether the policy contained "plain, unmistakable language" restricting the coverage of a particular type of insurance to that applicable to a single vehicle, regardless of the number of vehicles insured under the policy.

The Virginia Supreme Court has neither attached major importance to the type of insurance coverage involved[15] nor attempted to justify "stacking" by distinguishing medical payments and uninsured motorist coverage from other types of coverage, as did the Florida cases relied upon in *Mole, supra.*

■■■ Under the terms of the Middlesex policy, the three criteria set out in the Virginia cases that justify "stacking" are met with respect to bodily injury liability. Moreover, under the terms of the Middlesex policy, this court cannot find a conceptual difference between medical payments and uninsured motorist coverage and non-vehicle bodily injury liability coverage that would justify a different treatment of each.[16] This court therefore feels that the disposition of this case is governed by the determination of the Virginia Supreme Court that liability and separability provisions such as those contained in the Middlesex policy create an ambiguity when read together. To hold that these provisions creating an ambiguity under Virginia law with respect to medical payments and uninsured motorist liability do not create an ambiguity when applied to bodily injury liability would be a bold departure from the rationale of the Virginia cases considering this issue. Such a decision by this court would be in violation of the constitutional prescription of *Erie, supra* and in deference to the repudiated regime of Swift v. Tyson, 16

Pet. 1, 10 L.Ed. 865 (1842). This court accordingly holds that the Middlesex policy is ambiguous under Virginia law and that because of this ambiguity, the policy shall be construed strictly against the insurer and liberally in favor of the insured. The liability of Middlesex under its policy is therefore $25,000 for each automobile insured, for a total of $50,000.

For the above reasons, judgment is hereby entered in favor of the plaintiff against Dairyland in the amount of $20,000, with interest from May 11, 1973, plus the taxable costs of this suit, and against Middlesex in the amount of $50,000 with interest from May 11, 1973, plus the taxable costs of this suit.

The clerk is directed to send a certified copy of this opinion and judgment to counsel of record.

---

15. In *Cunningham, supra* the court did discuss the nature of uninsured motorist coverage and the status of various categories of insureds under the policy. These considerations concerned, however, only the question of liability under a policy issued to the Department of Highways, State of Maryland. The court made no reference to these concerns when it considered the propriety of "stacking" under a policy issued to a private

individual. *Cunningham,* 189 S.E.2d at 835–836.

16. Conceptually, this case is very close to *Elder, supra* in that the accident which triggered coverage under the policy did not involve any of the insured cars or the named insured. Coverage therefore was equally attributable to any of the cars insured.