JUSTICE KOONTZ,
with whom JUSTICE LACY joins, dissenting.
I respectfully dissent. The Virginia uninsured motorist statute is remedial in nature and is to be liberally construed so that its intended purpose, to protect the innocent victims of negligent uninsured/ underinsured motorists, may be accomplished. See Lipscombe v. Security Ins. Co., 213 Va. 81, 83, 189 S.E.2d 320, 322-23 (1972); Nationwide Mutual Insurance Co. v. Sours, 205 Va. 602, 606, 139 S.E.2d 51, 54-55 (1964). We are required to look to the words used in the statute to determine its meaning and to give effect only to the meaning so determined. See Rose v. Travelers Indemnity Co., 209 Va. 755, 758, 167 S.E.2d 339, 342 (1969).
When the accident in question occurred, Code § 38.2-2206 provided in pertinent part that:
A. [N]o policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance, or *20 use of a motor vehicle shall be issued or delivered in this Commonwealth to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this Commonwealth upon any motor vehicle principally garaged or used in this Commonwealth unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle with limits not less than the requirements of § 46.2-472. Those limits shall equal but not exceed the limits of the liability insurance provided by the policy. . . .
B. “Insured” as used in [subsection] A . . . means the named insured and, while resident of the same household, the spouse of the named insured, and relatives of either, while in a motor vehicle or otherwise, and any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured ....
(Emphasis added.)[1]
There is no dispute that the liability provisions of Liberty’s policy extended liability coverage to Stone’s vehicle.[2] Accordingly, subsection (A) required Liberty’s policy to also provide uninsured motorist coverage with limits equal to those of the liability policy, if Stone, as a user of that vehicle at the time of the accident, met one of the definitions of an “insured” contained in subsection (B).
On the facts of this case, the majority correctly identifies the crucial statutory language in subsection (B) defining “insured” to be “any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured.”
Contrary to the initial conclusion reached by the majority, however, this phrase does not limit “the motor vehicle” to one “listed in the policy.” The express language “to which the policy applies” modifies “the motor vehicle.” There can only be two interpretations of the phrase “the policy” when subsection (B) is read, as it must be, in context with subsection (A). This phrase can only mean “the uninsured motorist policy” or “the liability policy.” The former interpretation must be rejected because it would render the entire statute meaningless. This is so because the mandate of subsection (A) *21 for uninsured motorist coverage for an “insured” would never be invoked by a definition of insured under subsection (B) that is restricted to a user of a motor vehicle that already has uninsured motorist coverage. Rather, it is manifest that the legislature intended this phrase to refer to the liability coverage provision described in subsection (A), so that the phrase means “the motor vehicle to which the liability policy applies.”
Finally, the majority suggests that the statute’s requirement that use of the vehicle must be “with the expressed or implied consent of the named insured” eliminates non-owned vehicles from subsection B because a named insured cannot give permission to use a vehicle that the named insured does not own. Nothing in the statute suggests that such an interpretation was intended by the legislature to limit the mandate of subsection (A).
To accomplish the mandate that the insurer issue no liability insurance policy upon any motor vehicle principally used in this Commonwealth unless it contains an endorsement or provisions for uninsured motorist coverage in equal limits, the legislature expressly used the phrase “with the express or implied consent of the named insured” to modify the definition of insured in subsection (B). Thus, the legislature recognized that there are instances, such as the present case, where a “named insured,” i.e., the person or entity contracting for liability coverage, would not be the owner of all the vehicles to which the policy applies. Here, Stone was using a vehicle to which Liberty’s liability policy applies because he was using it in connection with Tidewater’s business, and he was doing so with the consent of Tidewater, the “named insured.”
For these reasons, in my view, at the time of the accident in question, Stone was an “insured” as defined by subsection (B) of the statute and, thus, notwithstanding the limiting provisions of the uninsured motorist endorsement of Tidewater’s automobile policy with Liberty, Code § 38.2-2206 mandated that Stone be provided coverage as an insured under the uninsured motorist endorsement of that policy. Accordingly, I would answer the certified question in the affirmative.

 Subsequent amendments to this statute are not pertinent to the issue in this case.

 The declarations page of the liability policy specifically identifies non-owned vehicles while being used in Tidewater’s business as “COVERED AUTOS.”