## Richmond

### HARDWARE MUTUAL CASUALTY COMPANY v. GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, LTD.

April 24, 1972.

Record No. 7623.

Present, All the Justices.

*Harry N. Gustin; S. Randall McDaniel (Taylor, Gustin, Harris, Fears & Davis,* on brief), for appellant.

*Charles A. McDuffie,* for appellee.

SNEAD, C.J., delivered the opinion of the court.

On July 4 and 5, 1965, James H. Brown negotiated with R. K. Chevrolet, Inc. of Virginia Beach for the purchase of a new 1965 Chevrolet Impala. James Brown took delivery of the Chevrolet on July 5 after signing a number of papers. An application for a Certificate of Title (Form 17), a conditional sales contract, a loan application, and an application for transfer of license plates and registration were among the papers signed by James Brown. He did not fill in the

information on the application for title, but left the blank application with R. K. Chevrolet. Brown also assigned to R. K. Chevrolet the Certificate of Title on his old car that he was trading.

R. K. Chevrolet did not sign the conditional sales contract until July 12. Also, an agent for R. K. Chevrolet filled in the information required in the application for title and stated in the application that the date of purchase was July 14, 1965. On the reverse side of the application, under the heading, "ASSIGNMENT OF TITLE AND NOTICE OF SALE," the date of sale of the Chevrolet is shown to be July 14, 1965. This side of the application for title was signed under oath by the agent.

On July 10, 1965, Persell Brown, James Brown's brother, while operating the Chevrolet with his brother's permission, was involved in an accident in which Wilma Sue Wehner received personal injuries. At the time of the accident, Persell Brown was the named insured on an automobile liability policy issued to him by Great American Insurance Company. James Brown was the named insured on a policy issued to him by General Accident Fire and Life Assurance Corp. (appellee), and R. K. Chevrolet was the named insured under a garage policy issued to it by Hardware Mutual Casualty Company (appellant).

General Accident settled the personal injury claim against Persell Brown for $7,500, but reserved its right to proceed against Hardware Mutual and Great American for indemnity or contribution. General Accident then filed in the trial court a Bill for Declaratory Judgment[1] seeking indemnity or contribution from Hardware Mutual and Great American. Hardware Mutual and Great American filed separate answers to the bill essentially stating that their respective policies did not afford coverage for the injuries sustained by Wilma Sue Wehner.

After hearing the evidence and arguments of counsel, the trial court decreed that the Chevrolet in question was owned by R. K. Chevrolet at the time of the accident, and that the policy issued to R. K. Chevrolet by Hardware Mutual afforded primary coverage to Persell Brown as the permissive user of an owned automobile within the terms of the policy. Further, the court decreed that the Chevrolet

---

[1] Since General Accident settled the personal injury claim before seeking a determination of the respective rights and obligations of the companies here involved, Declaratory Judgment was not the proper remedy for determining the issue of indemnification or contribution. See *Liberty Mutual* v. *Bishop*, 211 Va. 414, 177 S.E.2d 519 (1970). However, no error is assigned.

was a replacement vehicle within the terms of the policy issued to James Brown by General Accident, and therefore General Accident's policy also afforded primary coverage to Persell Brown as a permissive user of a replacement vehicle.[2]

Great American was held to be the excess carrier, but since the $7,500 settlement was within the limits of the primary coverage, Great American was not required to pay any amount.

The limit of liability on Hardware Mutual's policy was $300,000 and the limit of liability on General Accident's policy was $15,000. The trial court refused to accept Hardware Mutual's argument that under special provisions of its policy certain insureds were afforded limited coverage. The trial court decreed that these provisions were in conflict with the omnibus clause of Code § 38.1-381. In accordance with the "Other Insurance" provision of the two policies affording primary coverage, Hardware Mutual was ordered to pay General Accident $7,181.19 as its pro rata share of the liability.[3] We awarded Hardware Mutual an appeal from the trial court's decree.

In our view of the case two questions warrant consideration. First, whether under the facts of this case R. K. Chevrolet was the owner of the car in question on the date of the accident. Second, whether the special provisions limiting the amount of coverage on certain insureds were in conflict with the omnibus clause of Code § 38.1-381.

The finding that title to the Chevrolet had not passed to James Brown as of July 10, the date of the accident, was based on the ground that R. K. Chevrolet did not execute the application for issuance of a certificate of title in James Brown's name until July 14, 1965. In its letter opinion, the court held that, in order to transfer ownership to the purchaser, Code § 46.1-117 requires the dealer to execute the application for title.

In light of the fact that an agent of R. K. Chevrolet filled in the application and stated in the application that the date of purchase was July 14, 1965, and further, that his sworn statements on the reverse side of the application show the date of purchase to be July

[2] That portion of the trial court decree which holds that the Chevrolet was a replacement vehicle within the terms of General Accident's policy is not challenged on appeal and therefore we will not consider its correctness.

[3] The total limit of liability available under the two primary policies was $315,000. (Hardware Mutual $300,000, General Accident $15,000) Hardware Mutual's proportion of the total amount available was 20/21 of $315,000. Since the actual amount of liability was $7,500, plus costs in the sum of $40.25, Hardware Mutual was liable for 20/21 of $7,540.25 or $7,181.19.

14, 1965, we find it unnecessary to decide whether a dealer must execute the application for title in order to transfer ownership.

The information on both sides of the application for title, which information was supplied by R. K. Chevrolet, shows conclusively that ownership of the Chevrolet did not pass to James Brown until July 14, 1965. This was four days after the accident. That being the case, the Chevrolet was an owned automobile within the terms of Hardware Mutual's policy.

Further, the fact that Persell Brown was operating the automobile with James Brown's permission is uncontradicted. R. K. Chevrolet delivered the automobile to James Brown for his general use on July 5, and no restrictions were placed on Brown's use of the car. Whether Persell Brown was a permissive user was a question for the trier of fact to decide. *Robinson* v. *Fidelity and Casualty Co. of N.Y.*, 190 Va. 368, 57 S.E.2d 93 (1950).

■ Hardware Mutual also contends that assuming Persell Brown is an insured within the terms of its policy, the limit of liability is only $15,000 and not $300,000. This contention is premised on the language of an endorsement on the policy entitled, "Limited Coverage for Certain Insureds Endorsement." Generally, the endorsement amends Paragraph 3 of "Persons Insured" to exclude from coverage any "other person" who has other valid and collectible insurance if such other insurance is at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged. Also, the limit of liability available to such "other person" is the extent to which the applicable state's financial responsibility law's minimum requirements exceed the "other insurance" available to the "other person." At the time of the accident in this case the minimum requirement under the financial responsibility law for bodily injury to or death of any one person was $15,000. Code § 46.1-1(8).

Hardware Mutual concedes that these provisions are invalid as being in conflict with the omnibus clause of Code § 38.1-381 insofar as they reduce the limit of liability available by any amount representing "other insurance." *American Motorists Ins. Co.* v. *Kaplan*, 209 Va. 53, 161 S.E.2d 675 (1968). However, Hardware Mutual argues that if the "other insurance" limitations are read out of the provisions, they would be valid and the limit of liability available to Persell Brown would be only $15,000, the minimum requirement under the financial responsibility law. It argues the omnibus clause as

it read in 1965 provided the permissive user the same quality of coverage but not necessarily the same quantity of coverage extended the named insured.

The effect of this contention, if correct, would be to reduce Hardware Mutual's liability from twenty twenty-firsts of the settlement to one-half of the settlement. This is so because the total limit of liability available under Hardware Mutual's policy and General Accident's policy would be $30,000 instead of $315,000 (each have a $15,000 limit).

In view of the remedial purpose of Code § 38.1-381 (a), we cannot accept Hardware Mutual's contention. In *American Motorists Ins. Co.* v. *Kaplan, supra,* American Motorists argued that, "If the permissive user is to be insured 'within the coverage of the policy' then there is no direct prohibition against limiting the coverage or *limits of liability* as it applies to a permissive user." 209 Va. at 57 [Emphasis added.] We rejected this argument and said, "In our view, § 38.1-381 (a) requires each policy of automobile liability insurance to furnish a permissive user the *same coverage* as is afforded the named insured." 209 Va. at 58. [Emphasis added.] Without question, the words *same coverage* as used above apply to the quantity of coverage as well as the quality of coverage. The permissive user is entitled to the identical protection in every respect to which the named insured is entitled.

For the reasons stated the decree appealed from will be affirmed.

*Affirmed.*