Dudley J. EMICK, Jr., Administrator of the Estate of Jack Wesley Minnich, et al., Appellees,

v.

DAIRYLAND INSURANCE COMPANY, a Wisconsin Corporation, Defendant.

Appeal of MIDDLESEX MUTUAL INSURANCE COMPANY, a Massachusetts Corporation.

Dudley J. EMICK, Jr., Administrator of the Estate of Jack Wesley Minnich, et al., Appellees,

v.

DAIRYLAND INSURANCE COMPANY, a Wisconsin Company, Appellant,

and

Middlesex Mutual Insurance Company, a Massachusetts Corporation, Defendant.

Nos. 75–1015, 75–1016.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1975.

Decided Aug. 6, 1975.

Frank N. Cowan, Richmond, Va. (Gordon, Cowan & Dodson, Richmond, Va., on brief), for appellant in No. 75–1016.

S. D. Roberts Moore, Roanoke, Va. (Gentry, Locke, Rakes & Moore, Roanoke, Va., on brief), for appellant in No. 75–1015.

Thomas T. Lawson, Roanoke, Va., James M. Roe, Jr., Fincastle, Va. (Dudley

J. Emick, Jr., Carter, Roe, Emick & Honts, Fincastle, Va., Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., on brief), for appellees in Nos. 75–1015 and 75–1016.

Before HAYNSWORTH, Chief Judge, ANDERSON, Senior Circuit Judge,* and CRAVEN, Circuit Judge.

ROBERT P. ANDERSON, Circuit Judge:

On January 18, 1974 a judgment was entered in the Circuit Court of Roanoke County, State of Virginia in the amount of $75,507.50 (consisting of $50,000 for financial or pecuniary loss; $25,000 for solace; $500 for funeral expenses and $7.50 for medical expenses) in favor of Dudley J. Emick, Jr., as Administrator of the Estate of Jack Wesley Minnich, deceased, and against Sheriff T. J. Cundiff as Administrator of the Estate of David A. Ashwell, deceased. The judgment reflected damages found by the state court judge, sitting without a jury, to have been incurred in an automobile. accident on May 11, 1973.

The plaintiff, judgment creditor, Emick, Jr., Administrator, then brought the present action, in the United States District Court for the Western District of Virginia (Roanoke Division), on the state court judgment to recover the amount due with interest and costs. He sued the defendants-appellants, Dairyland Insurance Co. (Dairyland) and Middlesex Mutual Insurance Co. (Middlesex) on the grounds that Dairyland was the insurance carrier which, under the terms of its policy, had agreed to insure, up to $20,000, any person operating the 1970 Chevrolet automobile owned by one Sandra Wood, the named insured, with her permission; and that Middlesex was the excess insurance carrier in a policy of insurance, covering a 1972 Chevrolet Impala and a 1972 Chevrolet pick-up truck, owned by the named insured, George W. Lawhorn, covering any relative of the named insured, who was a member of his household, while he or she was operating a non-owned vehicle with the permission of its owner.

Emick, Jr., as Administrator, further asserted in connection with his claim against Dairyland that the 1970 Chevrolet owned by Sandra Wood was being operated by David Ashwell, with her permission, at the time and place of the accident on May 11, 1973; and that David Ashwell was a relative and member of George W. Lawhorn's household at the time of the collision.[1] The defendant insurance companies, however, claimed there was no evidence to support either of these assertions.

The district court submitted interrogatories to the jury in the form of a special verdict which were designed to resolve these questions. The answers which the jury returned, in effect, found that the plaintiff's allegations were true.[2] The

---

* Second Circuit Judge, sitting by designation.

1. "Relative" is defined in the policy as "a relative of the named insured who is resident of the same household." The policy provided,
   "PART I—LIABILITY

   . . . . .

   Persons Insured: The following are insureds under Part I:

   . . . . .

   (b) with respect to a non-owned automobile,

   (1) the named insured,

   (2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission . . . ."

2. The jury returned the following special verdict form:

   "As to. Dairyland, you will answer the following question:

   1. Did David Allen Ashwell have permission, express or implied, to drive the Wood vehicle at the time and place of the accident?
   Answer: Yes
   As to Middlesex, you will please answer the following questions:
   1. Did David Allen Ashwell have permission, express or implied, to drive the Wood

district court, on the basis of the special verdict, held that, at the time and place of the accident, David Ashwell came within the coverages of both policies, and it having been stipulated by the parties that damages would be determined by the court alone, considered entering judgment against Dairyland for $20,000 and against Middlesex for $25,000, both with interest and costs. Before the trial court actually entered any judgment, however, the plaintiff, Emick, Jr., Administrator, argued that the court should find $50,000 rather than $25,000 due from Middlesex on the ground that its policy covered two automobiles rather than one, and that the coverage for each, insured against liability incurred by a member of the named insured's household while he was operating a non-owned car. The court was ultimately persuaded, after briefs were submitted by the parties, that when an insurance company charges a separate and equal amount for non-owned vehicle liability coverage for each vehicle owned by the named insured and listed in the policy, the limitation of liability clause [3] and the provision applying the terms of the policy separately to each automobile insured under the policy (separability clause),[4] when read together, create an ambiguity which must be strictly construed against the insurance company, thereby requiring that the otherwise separate limits of bodily injury liability on each vehicle be stacked, resulting in a total liability in this case of $50,000.

The two issues now before this court on appeal are: whether there was sufficient evidence to support the jury's answers to the special verdict interrogatories relating to permission, express or implied, given Ashwell to drive the Wood car, and whether Middlesex, under the terms of its policy, was required to pay double the limit of bodily injury liability for one insured car because there was coverage for two cars, i. e. the 1972 Chevrolet Impala and the 1972 Chevrolet pick-up truck, and the car actually operated by Ashwell was neither of these, but was instead a non-owned automobile, i. e. the 1970 Chevrolet of Sandra Wood.

With regard to the first issue, the claim of insufficient evidence to support the jury's answers, we hold that the jury could reasonably have found the facts to be substantially as follows:

David Ashwell lived in Bedford, Virginia, with his step-father, George W. Lawhorn, and Mrs. Lawhorn, who was David's mother. Also living in the household was Michael Lawhorn, the son of Mr. and Mrs. Lawhorn. Sandra Wood was fairly well acquainted with David and Michael, as her brother was married to Mr. Lawhorn's daughter. Sandra, David and Michael, on May 11, 1973, through conversations held earlier in the day, arranged to go out together for the evening. She drove her car to the Lawhorn house, where she stayed a short while, conversing with her sister-in-law and others. At about 8:00 p. m. the

---

vehicle at the time and place of the accident?
Answer: Yes
2. Was the driver, David Allen Ashwell, a member of the Lawhorn household at the time of the accident? Answer: Yes
This 4th day of June, 1974
/s/ Houston M. Becker
Foreman"

3. Middlesex's liability clause provides, in relevant part:

"PART I—LIABILITY

. . . .

*Limits of Liability*: The limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care and loss of services,

arising out of bodily injury sustained by one person as the result of any one occurrence; the limit of such liability stated in the declarations as applicable to 'each occurrence' is, subject to the above provision respecting each person, the total limit of the company's liability for all such damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence. . . ."

4. The Middlesex "separability clause" states, in relevant part:

"CONDITIONS

. . . .

4. *Two or More* Automobiles—Parts I, II and III: When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each . . . ."

three of them left in Sandra's car, stopped to purchase beer, which David and Michael began to drink, and they then went to Roanoke where they persuaded two girls, Darlene and Delores Dooley, to accompany them, which the two did in their own car. Michael rode in the Dooley car, leaving Sandra and David in Sandra's car. To make up three couples, they induced George Brizindine who was driving a third car to go with them to Hollis Moose Lodge, where they arrived between 9:30 and 10:30 p. m. Up to this point Sandra Wood drove her own car; apparently neither Michael nor David had ever driven it.

At the lodge they danced and drank alcoholic beverages. Michael became so intoxicated that he had to be helped to Sandra's car in which he went into a stuporous sleep. The rest continued their entertainment at the lodge. Some time later an announcement was made that an automobile, having the registration number of Sandra's car, was blocking another car in the crowded parking lot and the request was made that the owner move it. Sandra, who was sitting down, took her car keys from her bag and started to get up, but David offered to move the car and she gave him the keys. He told Darlene Dooley that he would be back in a minute as he wanted to dance with her again. After a short while she and her sister went out to the parking lot to look for the car but they did not see it and went back into the lodge to dance. Sandra Wood expressed no concern that David had not returned promptly.

David drove the car out of the parking lot and turned south on a four-lane divided highway. He increased the car's speed to about 85 m. p. h. and passed two crossovers in the median strip where he could have gone over to the north bound lanes. When he was about a half a mile south of the Hollis Moose Lodge,

where there was no regular cross-over, he lost control of the car, went over the top of the median divider, and collided with the car in which Mr. and Mrs. Minnich were driving north on a northbound lane. David Ashwell, Michael Lawhorn and Mrs. Minnich were killed immediately, and Mr. Minnich died a few minutes later.

We hold that there was sufficient evidence under Virginia law to support the jury's conclusion that there was at least implied permission given by Sandra Wood to David Ashwell to take her car from the parking lot and drive down the four-lane highway at that time to the place of the accident.

This case is in the federal courts on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and Virginia law governs, *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

As required by the Virginia omnibus statute, Dairyland's and Middlesex's insurance policies both provided liability coverage for "the named insured and any other person responsible for the use of or using the motor vehicle . . with the consent, express or implied, of the named insured . . . ." [5] 6 Code of Virginia § 38.1–381(a) (1970 Repl.Vol. 1974 Supp.). Although the plaintiff has the burden of proof on the issue of permissive use, *Hartford Acc. & Indem. Co. v. Peach,* 193 Va. 260, 68 S.E.2d 520, 522 (1952), the Virginia omnibus statute is remedial in purpose and is to be liberally construed in order to broaden coverage, *American Auto. Ins. Co. v. Fulcher,* 201 F.2d 751, 756 (4 Cir. 1953); *State Farm Mutual Auto. Ins. Co. v. Cook,* 186 Va. 658, 43 S.E.2d 863, 865–67 (1947), particularly in view of the fact that one of its principal aims is "to establish a more comprehensive provision for the public by conferring financial answerability

5. The term "consent," as used in statutory omnibus clauses, has the same meaning as the term "permission" generally used in the case law. See G. Couch, Cyclopedia of Insurance Law § 45.344, at 349 (2d ed. 1964).

upon *any* driver." *Bernstein v. Nationwide Mutual Ins. Co.,* 458 F.2d 506, 508 (4 Cir. 1972). Moreover, because the issue of permissive use is one of fact, *Hardware Mutual C. Co. v. General A. F. & L. Assur. Corp.,* 212 Va. 780, 188 S.E.2d 218, 221 (1972); *American Auto. Ins. Co. v. Fulcher, supra,* at 756, the jury's verdict will not be disturbed unless it is "contrary to the evidence, without evidence to support it, or a 'plain deviation from right and justice.'" *Hinton v. Indemnity Ins. Co. of North America,* 175 Va. 205, 8 S.E.2d 279, 284 (1940).[6]

Although in cases involving marked departures from the express authority[7] given, particularly in a business or commercial context, Virginia has postulated that " '[p]ermission to do a specific thing is not permission to do all things' ", *State Farm Mutual Auto. Ins. Co. v. Cook,* 186 Va. 658, 43 S.E.2d 863, 866 (1947), quoting from *Sordelett v. Mercer,* 185 Va. 823, 40 S.E.2d 289, 294 (1946), under Virginia law a "general permission, or a comprehensive permission, is much more readily to be assumed where the use of the car is for social or non-business purposes . . . ." *Jordan v. Shelby Mutual Plate Glass & Casualty Co.,* 142 F.2d 52, 56 (4 Cir. 1944). See also *Nationwide Mutual Ins. Co. v. Vaughn,* 307 F.Supp. 805, 808 (W.D.Va. 1969), *aff'd per curiam* 427 F.2d 715 (4 Cir. 1970). Hence where, as here, a bailor gives express permission to a bailee, within a social context, to operate an automobile, and does not give specific limiting instructions, the jury is empowered to decide whether, under all the circumstances, the bailee also has implied permission to use the automobile for a personal errand or other social purposes not utterly inconsistent with the purposes of the bailor. See *Robinson v. Fidelity & Casualty Co. of New York,* 190 Va. 368, 57 S.E.2d 93 (1950); *Jones v. New York Casualty Co.,* 23 F.Supp. 932 (E.D.Va.1938). *Cf. Nationwide Mutual Ins. Co. v. Vaughn, supra,* at 808; *Jordan v. Shelby Mutual Plate Glass & Casualty Co., supra,* at 56.

The defendants have appealed from the district court's denial of their motion to set aside the verdict, n. o. v., on the ground that the evidence was insufficient, as a matter of law, to establish that David Ashwell was operating Sandra Wood's automobile, at the time and place of the accident, with her permission. The trial court properly submitted this factual issue to the jury; and the court's judgment, based on the special verdict, is affirmed.

We now turn to the second issue before us on appeal which is whether the district court was correct in deciding that Middlesex was required to pay double the $25,000 limit on liability for bodily injury to any one person, or a total of $50,000, under the circumstances of this case. We are of the opinion that the district court was in error in so holding, and we reverse this portion of its judgment.

The district court's decision rested upon its interpretation of previous Virginia Supreme Court decisions upholding the stacking of liability limits with respect to medical payments coverage and uninsured motorist coverage. See *Central Surety and Ins. Corp. v. Elder,* 204 Va. 192, 129 S.E.2d 651 (1963); *Virginia Farm Bureau Mutual Ins. Co. v. Wolfe,* 212 Va. 162, 183 S.E.2d 145 (1971); *Lipscombe v. Security Ins. Co. of Hartford,* 213 Va. 81, 189 S.E.2d 320 (1972); *Cun-*

---

6. Appellant Middlesex concedes on appeal that if Dairyland is liable as primary insurer by virtue of its policy issued to Sandra Wood, Middlesex is also liable as excess insurer because the pertinent terms of its insurance agreement with Mr. Lawhorn are essentially the same.

7. Express permission under Virginia law "must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference." *Aetna Cas. & Sur. Co. v. Anderson,* 200 Va. 385, 105 S.E.2d 869, 873 (1958); *Hinton v. Indemnity Ins. Co. of North America,* 175 Va. 205, 8 S.E.2d 279, 283 (1940).

ningham v. Insurance Co. of North America, 213 Va. 72, 189 S.E.2d 832 (1972). The issue is whether the principle of stacking approved in these medical payment and uninsured motorist cases should be extended to liability for bodily injury incurred while driving a non-owned automobile.

An examination of these decisions reveals that the following criteria have received the most attention:

(1) Whether the policy contained not only a liability clause [8] but also a separability clause which required the terms of the policy to be applied separately to each automobile insured under the policy.[9]

(2) Whether a separate premium was paid for the type of coverage in question (medical payments or uninsured motorist) for each automobile insured under the policy.

An affirmative answer to both questions has been held to create an ambiguity in the insurance policy which must be construed against the insurer and in favor of the insured, American Fidelity Fire Ins. Co. v. Allstate Ins. Co., 212 Va. 302, 184 S.E.2d 11, 13 (1971), thereby bringing about stacking. It is important to understand the exact nature of this ambiguity, however, lest the principle of stacking which flows from it be misapplied.

The reasoning by which an ambiguity is created, and stacking is allowed, runs as follows: if a single automobile insurance policy, insuring two specifically described cars is assumed, it is apparent that the liability clause, on the one hand, relied upon by the insurance company, can be read as establishing the upper limits of the insurance company's liability, regardless of the number of cars insured under the policy. The separability clause, on the other hand, provides that the terms of the policy shall apply separately to each car, and no exception is made for the limit of liability clause, which is usually included in an automobile insurance policy, though it insures only one car. The policy can therefore be construed to be, in effect, two policies of insurance, with the liability clause applying separately and independently to each car. This view is supported by the fact that separate premiums are charged for the insurance coverage in question [medical payment or uninsured motorist] for each car insured. When an insured pays double premiums, he expects double coverage. Furthermore, there is no question that if separate insurance policies had been written by the insurance company for each car, and separate premiums paid, the insured could recover up to the limits of liability for the insurance coverage in question [medical payment or uninsured motorist] for each car insured. Hence the insurance contract is susceptible to two fair and reasonable constructions, and this ambiguity is resolved in favor of the construction which permits a greater indemnity. See Central Surety and Ins. Corp. v. Elder, supra, 129 S.E.2d at 654–655; Cunningham v. Insurance Co. of North America, supra, 189 S.E.2d at 836–37; Lipscombe v. Security Ins. Co. of Hartford, supra, 189 S.E.2d at 322.

Two crucial links in this chain of reasoning, however, are missing in the instant case. In the first place, there is no proof that a specific premium was assessed by Middlesex for non-owned vehicle liability coverage for each car insured under the policy, as it was for medical payments and uninsured motorist coverages. The relevant and material policy provisions provide:

"DECLARATIONS

·     ·     ·     ·     ·

Item 3. The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charges. The limit

---

8. See note 3, supra.

9. See note 4, supra.

**1324**

of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COVERAGES | | LIMITS OF LIABILITY | PREMIUMS car 1 | car 2 |
|---|---|---|---|---|
| A | Bodily Injury liability | 25 thousand dollars each person 50 thousand dollars each occurrence | $18.00 | $18.00 |

"PART I—LIABILITY

*Coverage A —Bodily Injury Liability* ;
. . . : To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages, because of:

A. bodily injury, . . . including death resulting therefrom, . . sustained by any person; . . . arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile . . . ."

The policy is silent as to what portion of each $18.00 premium, if any, was charged for non-owned automobile bodily injury liability coverage. Nor was the factual issue of whether or not the insured had been charged twice for non-owned automobile liability coverage, as was found by the court below, raised in appellee's complaint or explored by means of testimonial and other evidentiary proof at trial.[10]

In the absence of such proof, this court cannot assume, as did the district court,[11] that a double premium was charged and paid for non-owned automobile liability coverage. *Cf. Allstate Ins. Company v. Zellars,* 462 S.W.2d 550, 556 (Tex.1970); *American Liberty Ins. Co. v. Ranzau,* 481 S.W.2d 793, 797–98 (Tex. 1972). The very concept of non-owned automobile liability coverage—protection for the policy holder while driving any of all the non-owned vehicles in the world—precludes such an assumption, because there is no rational nexus between this coverage and the number of owned vehicles listed in the policy, and hence no rational basis for a charging of more than one premium. See *Allstate Ins. Co. v. Mole,* 414 F.2d 204, 207 (5 Cir. 1969). It cannot even be safely assumed that any premium whatsoever is charged for this coverage, for it is equally possible that insurance companies offer such coverage gratuitously as part of a bodily injury liability package designed to encourage customers to buy their insurance in much the same way as they offer automobile insurance protection to the members of the named insured's family and relatives who live with him (be they one or a dozen or more) without charging extra premiums for them.

---

10. Moreover, appellee alleged in his brief only that equal premiums were charged for the liability portion of the policy, and offered no proof as to what portion, if any, of the $18 premium charged with respect to each car was for non-owned automobile liability coverage. Middlesex's brief said no more than to represent that an $18 premium was charged for bodily injury liability on each of the two cars.

11. As the district court stated, in footnote 14 of its opinion:

"To the extent that the owner in *Mole* did not pay an additional premium for non-owned vehicle coverage for an additional insured car, the policy *sub judice* is distinguishable. A premium of $18.00 was paid for each of the two cars insured. *Assuming part of that premium is attributable to non-[owned]-vehicle coverage, the premium on the additional insured cars should be less than $18.00 if an additional premium for non[-owned]-vehicle coverage were not assessed.*" (Emphasis added.)

In the second place, even if separate insurance policies had in fact been written by Middlesex for each motor vehicle owned by the insured, and separate premiums paid for bodily injury liability, the insured still could not recover $25,-000 for each insured motor vehicle based upon an accident in a non-owned automobile. The reason for this seeming anomaly lies in the difference between bodily injury liability coverage, on the one hand, and medical payments coverage and uninsured motorist coverage, on the other. The latter are broad "first-party" coverages closely akin to personal accident policies. See 7 J. Appleman, *Insurance Law and Practice* § 4331, at 209 (1962); *Rosar v. General Ins. Co. of America,* 41 Wis.2d 95, 163 N.W.2d 129, 132 (1968); *Greer v. Associated Indemnity Corp.,* 371 F.2d 29, 33–34 (5 Cir. 1967); *Allstate Ins. Co. v. Mole, supra,* at 206–07; *Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. 783, 457 P.2d 34, 36 (1969); *Lipscombe v. Security Ins. Co. of Hartford, supra,* 189 S.E.2d at 322–23. Medical payments coverage[12] generally extends broad protection to the named insured and specified relatives for all reasonable medical expenses incurred as the result of injuries suffered in an accident "while occupying or through being struck by an automobile . . . ." *Allstate Ins. Co. v. Mole, supra,* at 206: quoting from *Government Employees Ins. Co. v.*

*Sweet,* 186 So.2d 95, 96 (Fla.App.1966); *Rosar v. General Ins. Co. of America, supra,* 163 N.W.2d at 132. Recovery is independent of the automobile's ownership or its status as insured or uninsured, as well as irrespective of any liability on the part of the insured. See *Allstate Ins. Co. v. Mole, supra,* at 206; *Greer v. Associated Indemnity Corp., supra,* at 34. Uninsured motorists provisions[13] likewise extend broad coverage to the named insured and specified relatives for damages due to bodily injury caused by an uninsured automobile "after the liability of the uninsured motorist for the injury has been established." *Sturdy v. Allied Mutual Ins. Co., supra,* 457 P.2d at 36. Their basic purpose is to provide compensation for personal injury to "the innocent victims of negligent uninsured motorists," *Lipscombe v. Security Ins. Co. of Hartford, supra,* 189 S.E.2d at 323; *Sturdy v. Allied Mutual Ins. Co., supra,* 457 P.2d at 41, and it makes no difference whether the insured is in an automobile described in the policy, as driver or passenger, or a non-owned car or standing on a sidewalk.

It is apparent, therefore, that both of these types of insurance coverages focus on the person of the insured, rather than on his liability arising out of the operation of a particular vehicle. Although at times an unstated premise,[14] it is precise-

12. Middlesex's medical payments coverage provides, in relevant part:

"PART II—EXPENSES FOR MEDICAL SERVICES

*Coverage C—Medical Payments*: To pay all reasonable expenses incurred within one year from the date of the accident for necessary medical . . . services . . . : *Division* 1. To or for the named insured and each relative who sustains bodily injury, . . . including death resulting therefrom, . . . caused by accident,
(a) while occupying the owned automobile,
(b) while occupying a non-owned automobile, but only if such person has, or reasonably believes he has, the permission of the owner to use the automobile and the use is within the scope of such permission, or
(c) through being struck by an automobile or by a trailer of any type; . . . .."

13. Middlesex's uninsured motorists coverage provides in pertinent part:
"PART IV—PROTECTION AGAINST UNINSURED MOTORISTS
*Coverage J*—Uninsured Motorists (Damages for Bodily Injury): To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, . . . including death resulting therefrom, . . . sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile. . . .."

14. Although, as noted by the district court, the Virginia Supreme Court did not place its major emphasis on the type of insurance coverage involved in those medical payments and uninsured motorists stacking cases that came before it, we believe it to be implicit in the

ly the floating, personal accident insurance character of medical payments and uninsured motorists coverage which has led courts to ignore the fact that these coverages have been engrafted onto liability policies insuring particular cars, and to hold that where double premiums have been paid, whether under a single policy covering more than one automobile, or whether under separate and independent policies, double coverage has been purchased, and stacking will be allowed, absent " 'plain, unmistakable language' restricting the coverage to that applicable to a single vehicle." *Lipscombe v. Security Ins. Co. of Hartford, supra,* 189 S.E.2d at 322. See also *Virginia Farm Bureau Mutual Ins. Co. v. Wolfe, supra,* 183 S.E.2d at 147.

By contrast, bodily injury liability coverage is linked to the ownership, maintenance or use of an owned automobile or a non-owned automobile by the insured and others to whom the coverage is extended. Its basic purpose has "always been conceived to be the protection of the policyholder against loss resulting from legal liability caused by his operation of a motor vehicle" and, as such, "pertain[s] fundamentally to the vehicle." 7 J. Appleman, *supra,* at 208–09. It is for this reason that courts have universally rejected the contention that separability clauses create an ambiguity with regard to bodily injury liability coverage where more than one automobile is listed under the policy, and one of the listed automobiles is involved in an accident. As the court stated in *Pacific Indem. Co. v. Thompson,* 56 Wash.2d 715, 355 P.2d 12 (1960), referring to a typical separability clause:

"that provision merely assures the applicability of the policy to whichever car is involved in an accident, or to all the cars, and does no more."

See also *Basso v. Allstate Ins. Co.,* 19 Ariz.App. 58, 504 P.2d 1281 (1973); *Community Service Ins. Co. v. Price,* 41 Mich. App. 604, 200 N.W.2d 450 (1972); *Rosar v. General Ins. Co.,* 41 Wis.2d 95, 163 N.W.2d 129 (1968); *Greer v. Associated Indem. Corp.,* 371 F.2d 29 (5 Cir. 1967); *Government Employees Ins. Co. v. Lally,* 327 F.2d 568 (4 Cir. 1964).

The extension of this reasoning to non-owned vehicle bodily injury liability coverage follows naturally so long as there is no misapprehension as to the nature of such coverage. Obviously, any one insured can operate but one automobile at a time. Bodily injury liability coverage, with its attendant limits of liability, is therefore designed to attach to whichever automobile an insured happens to be driving, whether that automobile is one of several automobiles listed under the policy or whether it is a non-owned automobile. In the latter case, the non-owned automobile merely substitutes for, or stands in the place of, one of the named insured's owned and listed automobiles, and the bodily injury liability package, with its per person and per occurrence limits, attaches to this non-owned automobile for as long as the insured is potentially subject to liability arising out of its maintenance or use.[15]

---

Court's assumption that if the insured had carried a separate policy upon each of two vehicles, he would have been entitled to receive up to the stated limit of liability for both medical payments coverage and uninsured motorists' coverage under each policy, *Cunningham Ins. Co. of North America,* 213 Va. 72, 189 S.E.2d 832, 836 (1972); *Lipscombe v. Security Ins. Co. of Hartford,* 213 Va. 81, 189 S.E.2d 320, 323 (1972), because double liability for these types of coverage had already been widely accepted by other jurisdictions. But, there is not even a remote suggestion or implication that the Court contemplated applying the same principle to the whole or any part of bodily injury liability.

**15.** Although we agree with the court's holding in *Allstate Ins. Co. v. Mole,* 414 F.2d 204 (5 Cir. 1969), i. e., that policy limits of non-owned vehicle insurance may not be multiplied by the number of owned vehicles under the policy to increase the insurer's liability, we necessarily disagree with the following portion of its analysis regarding the nature of non-owned vehicle coverage:

"Non-owned vehicle coverage by definition cannot be derived from the coverage on a particular owned vehicle. It is separate insurance . . . ." 414 F.2d at 207.

These statements are both overbroad and unnecessary to the result.

If an insured is in an accident while he is driving one of the cars described in a policy, covering two or more cars, the liability coverage for bodily injury is *not doubled* or multiplied by the number of cars in the policy; and there is no sound reason why there should be a doubling or multiplying of the limits of liability simply because the insured was operating a non-owned car. Such an enlargement of possible recovery would be entirely fortuitous and whimsical. The court should adhere to and enforce the plain limit of liability for a single insured motor vehicle, as plainly stated in the policy.

This interpretation seems most likely to comport with the understanding of both the insurance company and the named insured at the time such coverage is purchased. Certainly nothing in Middlesex's insurance policy bearing upon bodily injury liability conveys or implies a contrary impression. That policy promises to pay all sums which the insured shall become legally obligated to pay as damages because of bodily injury "arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile . . . ." Non-owned automobiles appear to have been added to owned automobiles in the above coverage almost as an afterthought because the word ownership, and in most cases the word maintenance, would not apply to a non-owned automobile. Furthermore, as previously noted, Item 3 of the "Declarations" does not differentiate between owned-automobile bodily injury liability and non-owned-automobile bodily injury liability, and no differentiation is made in the premiums charged.

No court of review in this country has ever adopted the plaintiff-appellee's theory of double recovery for bodily injury liability coverage, under a policy such as that now before us, simply because the insured was driving a non-owned automobile, thus equating the nature of bodily injury liability coverage with medical payment and uninsured motorist coverages when there is no similarity between them or any undergirding reason or rational basis for doing so.

Because of the foregoing considerations, we conclude that the Supreme Court of Virginia would not require the stacking of the limits of liability for bodily injury under the circumstances of this case. The judgment of the district court as to this issue is reversed.

The remaining issues are not of sufficient merit to call for discussion.

Affirmed in part; reversed in part.