## Richmond

CAROL H. MITCHELL

V.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

Record No. 812082.

June 15, 1984.

Present: All the Justices.

Peter A. Cerick for appellant.
Edward H. Grove, III (Brault, Geschickter, Palmer & Grove, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

In this declaratory judgment proceeding, Carol H. Mitchell sought a determination that she could "stack" (*i.e.*, combine or aggregate) underinsurance coverages under three policies issued to her husband by State Farm Mutual Automobile Insurance Company. Relying on *Goodville Mut.* v. *Borror*, 221 Va. 967, 275 S.E.2d 625 (1981), as controlling, the trial court, by order entered September 24, 1981, ruled that the coverages could not be combined. On appeal, Mitchell challenges this ruling.

On November 3, 1979, Mitchell was involved in an accident in which a van she was operating collided with a vehicle operated by William Robert Maynard. Maynard's father was the named insured on a State Farm insurance policy with a limit of liability of $50,000 for bodily injury to one person. State Farm was also Mitchell's insurance carrier, having issued to her husband, Donald, three policies, one covering the van she was driving at the time of the accident, one covering another van, and one covering two automobiles. Each of the Mitchell policies contained an uninsured motorist coverage endorsement in the amount of $25,000 per person and $50,000 per occurrence, the minimum required by Code § 38.1-381. Each policy also included underinsured motorist coverage under an endorsement reading as follows:

6273H SUPPLEMENTARY UNINSURED MOTOR-
ISTS INSURANCE
(Bodily Injury—Property Damage—Limits—Underinsured
Motorists)

(Virginia)

It is agreed that, with respect to such insurance as is afforded by the policy for damages because of bodily injury and property damage caused by accident and arising out of the ownership, maintenance or use of an uninsured motor vehicle, subdivision (a) of the definition of "uninsured motor vehicle" is amended to include "underinsured motor vehicle", subject to the following provisions:

1. If limits of liability for such insurance are stated in the schedule of this endorsement:
   (a) the limits so stated as applicable to "Bodily Injury" shall apply in lieu of any limits therefor stated elsewhere in the policy and, subject to all the terms of the policy having reference thereto, shall be the total limit of the company's liability for all damages because of bodily injury as the result of any one accident arising out of the ownership, maintenance or use of uninsured motor vehicles;
   (b) the limits so stated as applicable to "Property Damage" shall apply in lieu of any limits therefor stated elsewhere in the policy and, subject to all the terms of the policy having reference thereto, shall be the total limit of the company's liability for all damages because of property damage as the result of any one accident arising out of the ownership, maintenance or use of uninsured motor vehicles.
2. When used in reference to this insurance (including this and other endorsements forming a part of the policy):
   "underinsured motor vehicle" means a motor vehicle with respect to the ownership, maintenance or use of which, as respects damages because of bodily injury or property damage or both, the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies respectively applicable to bodily injury or property damage at the time of the accident is less than the applicable limits of liability under this insurance.
3. The company shall not be obligated to make any payment because of bodily injury or property damage to which this insurance applies and which arises out of the ownership, maintenance or use of an underinsured motor vehicle until

after the limits of liability under all bodily injury and property damage liability bonds or insurance policies respectively applicable at the time of the accident to damages because of bodily injury or because of property damage have been exhausted by payment of judgments or settlements.

Mitchell brought an action against Maynard for personal injuries allegedly resulting from the accident. Before trial, however, Mitchell and State Farm executed an agreement and stipulation under which State Farm agreed to pay Mitchell $50,000 under the Maynard policy. It was further provided that Mitchell would initiate a declaratory judgment proceeding against State Farm to determine whether Maynard's vehicle was underinsured and whether Mitchell could stack the underinsured motorist coverages of her three policies to arrive at the coverage for which State Farm was liable. If Mitchell were permitted to combine the three coverages of $25,000 each, State Farm would pay her an additional $25,000.[1] If Mitchell could not combine the coverages, her single coverage of $25,000 under each policy would be less than Maynard's liability coverage, he would not be underinsured, and State Farm would not owe Mitchell any more money.

This is the first case presenting to us the question whether underinsurance coverages of an insured may be stacked. In four cases, however, we have considered the stacking of uninsured motorist coverages.

The first case was *Bryant v. State Farm Mutual*, 205 Va. 897, 140 S.E.2d 817 (1965), in which an uninsured motorist struck plaintiff's father's truck while plaintiff was driving it. Plaintiff collected under the uninsured motorist coverage of his father's policy. The same insurance carrier, however, refused to pay plaintiff under his own similar policy. The insurer claimed that an "other insurance" clause in the policy restricted its coverage to the amount which exceeded the limits of other similar insurance. We held that the "other insurance" clause was illegal, as it conflicted

---

[1] Initially, Mitchell contended that she could stack an additional $25,000 in coverage because of the policy which covered two vehicles. While the declaratory judgment proceeding was pending, however, we decided *Goodville Mut. v. Borror*, 221 Va. 967, 275 S.E.2d 625 (1981), construing policy language similar to that in Mitchell's two-vehicle policy to prohibit stacking. Mitchell conceded that *Goodville* prevented her from stacking under this policy and reduced her claim to $25,000.

with the requirement of the uninsured motorist statute (Code § 38.1-381) that insurance policies "pay the insured 'all sums' which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." *Id.* at 901, 140 S.E.2d at 820. Therefore, plaintiff was entitled to recover under his own policy as well as his father's.

In *Cunningham* v. *Insurance Co. of North America*, 213 Va. 72, 189 S.E.2d 832 (1972) and *Lipscombe* v. *Security Insurance*, 213 Va. 81, 189 S.E.2d 320 (1972), we held that the uninsured motorist coverage in a multi-vehicle policy was increased by the number of vehicles insured. We cited with approval *Sturdy* v. *Allied Mutual Insurance Co.*, 203 Kan. 783, 457 P.2d 34 (1969), holding that uninsured motorist coverage in such cases could be stacked unless the plain and unambiguous language of the policy prevented it. *See Lipscombe*, 213 Va. at 84, 189 S.E.2d at 323.

Our most recent decision on the subject is *Goodville Mut.* v. *Borror*, 221 Va. 967, 275 S.E.2d 625 (1981). In that case, the insured, like the insureds in *Cunningham* and *Lipscombe*, had a policy that covered more than one vehicle, and he paid a separate premium for each vehicle. We reaffirmed the rule approved in *Cunningham* and *Lipscombe* that coverage could be stacked absent clear and unambiguous language in the policy to prevent it. 221 Va. at 970, 275 S.E.2d at 627. The insured's policy, however, contained the following language, which we held clearly and unambiguously prohibited stacking:

### III. LIMITS OF LIABILITY

*Regardless of the number of . . . motor vehicles to which this insurance applies,*

(a) the limit of liability for bodily injury stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

*Id.* at 970-71, 275 S.E.2d at 627-28 (emphasis added).

Mitchell relies primarily on *Bryant* v. *State Farm Mutual, supra. Bryant*, however, is inapposite because the determining factor was the applicable uninsured motorist statute. In the present case there was no applicable statute requiring or authorizing underinsurance coverage. The underinsurance endorsement was authorized by Administrative Order No. 6840, dated March 19, 1974, of the State Corporation Commission, which prescribed language to be used in a standard form by insurance carriers. The underinsured endorsement in each of the three policies contained the language thus required by the Commission, and it is this language that is determinative of the case.[2]

Courts in several other jurisdictions have considered whether an insured's coverage may be stacked to determine whether a tortfeasor was underinsured. *See* Annot., 25 A.L.R.4th 6 (1983). The cases were decided, however, on the basis of statutory or policy language different from that in the present case.

Mitchell argues that certain Louisiana cases are persuasive authority for her position. In *Rascoe* v. *Wilburn*, 295 So.2d 201 (La. Ct. App. 1974), a Louisiana statute provided that a tortfeasor was underinsured if his coverage was "less than the uninsured motorist coverage carried by an insured." *Id.* at 205. It was held that under this statute the insured could stack his coverage to determine whether the tortfeasor was underinsured. *Id.* at 206. *See also Raggio* v. *Volkswagen Insurance Co.*, 327 So.2d 505 (La. Ct. App. 1976).[3]

Maine and Florida also have allowed the stacking of underinsurance coverage. In *Connolly* v. *Royal Globe Insurance Co.*, 445 A.2d 932 (Me. 1983), a statute defined "underinsured motor vehicle," in part, as one "for which coverage is provided, but in amounts . . . less than the limits of the injured party's uninsured vehicle coverage." *Id.* at 934. The court held that the insured's policies could be stacked to determine whether the tortfeasor was underinsured. *Id.* at 935.

---

[2] During the pendency of this case, the uninsured motorist statute was amended to include underinsured vehicles. Acts 1982, cc. 638, 642. The language of the amended statute relating to underinsured vehicles differs from the language prescribed by Administrative Order No. 6840 of the State Corporation Commission. It is not contended that the statute, as amended, is applicable in this case, however, and we will not construe it in this opinion.

[3] In 1977, the Louisiana uninsured motorist statute was amended to prohibit stacking, except that an insured who is injured in a vehicle he does not own may use his own uninsured motorist policy as excess coverage over and above the primary coverage on the vehicle. *See Hubbard* v. *Milner*, 408 So.2d 1004, 1006 (La. Ct. App. 1981).

The applicable Florida statute provided that the term "uninsured motor vehicle" included an insured vehicle with bodily injury liability coverage "less than the limits applicable to the injured person provided under his uninsured motorist's coverage." *Government Employees Insurance Co.* v. *Farmer*, 330 So.2d 236, 238 (Fla. Dist. Ct. App. 1976). The court held that plaintiff could stack his coverage under two policies, since he was entitled to the full protection for which he had paid premiums. *Id.* at 238. *See also State Farm Mutual Automobile Insurance Co.* v. *White*, 330 So.2d 858 (Fla. Dist. Ct. App. 1976).

In the present case, there is no applicable statutory definition of "underinsured motor vehicle." The endorsement in each of Mitchell's policies, however, provides in pertinent part that an underinsured motor vehicle is one with respect to which the sum of the limits of liability under all insurance policies applicable to bodily injury is "less than the applicable limits of liability under this insurance." State Farm contends that under *Goodville* the words "this insurance" in each policy clearly and unmistakably mean the individual insurance policy, rather than the combined coverage of all three policies. Under this argument, if the limits of liability for bodily injury under Maynard's policy were less than the limit of liability for underinsurance coverage in any one of Mitchell's policies, then Maynard's vehicle would be underinsured. Since the limits of liability under Maynard's policy were $50,000, says State Farm, they were not less than the $25,000 limit of liability for underinsured coverage in any one of the policies, and his vehicle was not underinsured.

In *Goodville*, "this insurance" meant the uninsured motorist endorsement attached to the policy. In that case, however, there were no other policies. Under a policy definition of "underinsured vehicle" similar to that in the present case, it was held in *St. Arnaud* v. *Allstate Ins. Co.*, 501 F. Supp. 192 (S.D. Miss. 1980), that the insured could stack his coverage under a policy insuring three vehicles. The court pointed out that its holding was not inconsistent with that of the same court in *Carroll* v. *Government Employees Insurance Co.*, 372 F. Supp. 405 (S.D. Miss. 1974). In *Carroll*, there was an unambiguous limitation of liability regardless of the number of vehicles, similar to that in *Goodville*, but absent from the policy construed in *St. Arnaud*. The court in *St. Arnaud* ruled that an ambiguity existed as to the meaning of "this insurance" in the policy, the ambiguity being whether, in the ab-

sence of qualifying language as in *Carroll*, "this insurance" meant only one coverage or one for each vehicle. Under familiar principles, the court resolved the ambiguity in favor of the insured. 501 F. Supp. at 194.

We agree that "this insurance" can only mean the insurance coverage provided by the policy to which the endorsement is attached. The endorsement is entitled "Supplementary Uninsured Motorists Insurance." It refers to the policy to which it is attached. It refers to limits of liability for "such insurance." It defines "underinsured motor vehicle" as those words are "used in reference to this insurance (including this and other endorsements forming a part of the policy)." So "this insurance" can only mean the insurance provided by the endorsement.

It follows that each of the Mitchell policies must be considered independently to determine whether Maynard was underinsured. In each policy, Mitchell's uninsured coverage was $25,000, which was less than Maynard's liability coverage, so that Maynard's vehicle by definition was not underinsured. This means that the vehicle of a tortfeasor insured under a policy with minimum or higher limits of liability is not underinsured as to a plaintiff insured under a policy or policies with minimum limits of liability. For a plaintiff with minimum coverage, therefore, the underinsured motorist endorsement is worthless. Nevertheless, as we observed in *Goodville*, where the language of the policy is clear and unambiguous, and we hold it to be so in this case, it will control. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*