## CIRCUIT COURT OF LOUDOUN COUNTY

Blaha

v.

John Thomas Tinney, III

v.

Raymond J. Martin

February 18, 1988

Case No. (Law) 9306

By JUDGE JAMES H. CHAMBLIN

This case is before the Court on the Plea in Bar and Motion to Dismiss of Nationwide General Insurance Company ("Nationwide") seeking to be dismissed as a party to this proceeding and a dismissal of all claims by the plaintiff against it. Nationwide was served with process because the plaintiff alleges that it must extend coverage to her as an underinsured motorist (UI) carrier. Nationwide claims it should be dismissed because, first, it did not, and was not required to, provide UI coverage to the plaintiff, and, second, any action or claim against it is barred by the two year Statute of Limitations.

For the reasons hereinafter set forth, the Plea in Bar is overruled and the Motion to Dismiss is denied.

The proceedings in this case and its predecessor in this Court must be considered against the background of the enactments of the 1982 Virginia General Assembly concerning underinsured motorist coverage.

The plaintiff was injured while a passenger on a motorcycle operated by Raymond J. Martin ("Martin") when it collided with a vehicle driven by John Thomas Tinney, III ("Tinney") on May 5, 1984. On May 5, 1986, the plaintiff filed suit against Tinney for injuries received in the accident. Tinney filed Grounds of Defense on May 28, 1986. On May 20, 1987, Nationwide was served with a copy of process. Nationwide appeared specially in the case and filed various motions seeking a dismissal of the action as to it. On July 2, 1987, at the request of the plaintiff, a non-suit order was entered.

Thereafter, on July 23, 1987, the plaintiff filed the present suit against Tinney requesting service on Nationwide; Nationwide was served with a copy of process on July 27, 1987. Nationwide appeared specially and filed a Plea in Bar, a Motion to Dismiss, a Motion for Stay and a Motion for a Bill of Particulars. The Plea in Bar and Motion to Dismiss are before the Court at this time. Tinney was served through the Secretary of the Commonwealth on November 9, 1987, and filed his Grounds of Defense on November 30, 1987. On December 2, 1987, a Third Party Motion for Judgment was served on Martin, and he has filed responsive pleadings. Martin has elected not to take a position as to the issues raised by the Plea in Bar and Motion to Dismiss.

## I. *The Question of Underinsured Motorist Coverage*

In 1974, the Virginia State Corporation Commission first approved a form through which insurance companies could offer UI coverage on a voluntary basis. Prior to this, the General Assembly enacted legislation requiring that policyholders be given the opportunity to buy more uninsured motorist (UM) coverage for an additional premium. The 1982 General Assembly enacted for the first time legislation concerning UI coverage. It did this by the passage of two Acts, as follows: (1) Chapter 638 of the 1982 Acts of the Assembly (House Bill 462); and (2) Chapter 642 of the 1982 Acts of the Assembly (House Bill 461).

Both acts were approved on April 12, 1982, but Chapter 638 of the Acts of the Assembly became effective July 1, 1982, per Section 13, Article IV, of the Constitution of Virginia while Chapter 642 of the same Acts by its own provisions became effective January 1, 1983. Language in Section 38.1-381 (b) and (c) concerning the obligation to provide UI coverage and the definition of an underinsured vehicle was contained in Chapter 638 effective July 1, 1982, but not in Chapter 642 effective January 1, 1983. No action was taken by the 1983 General Assembly as to Section 38.1-381. However, the 1984 General Assembly did amend Section 38.1-381 by Chapter 541 of the 1984 Acts of the Assembly (House Bill 420), and that Act amended and reenacted Section 38.1-381 effective July 1, 1984, with language in Section (b) and (c) thereof clearly requiring UI coverage. The accident which is the subject of this suit occurred during the period from January 1, 1983 (when Chapter 642 of the 1982 Acts of the Assembly became effective) and July 1, 1984 (when Chapter 541 of the 1984 Acts of the Assembly became effective). Because the language in Section 38.1-381 (b) and (c) concerning UI coverage was not in Chapter 642 of the 1982 Acts of the Assembly effective January 1, 1983, Nationwide argues that it had no obligation to provide UI coverage during the period from January 1, 1983, to July 1, 1984.

Nationwide has also asserted that the policy issued to the plaintiff's mother (it is assumed, but not admitted, for purposes of these motions that the plaintiff was at the time of the accident a resident of her mother's household, and, therefore, an "insured" under Nationwide's policy) did not, as a matter of fact, provide UI coverage. As I have decided as hereafter set forth that Nationwide was, at the time of the accident, statutorily obligated to provide UI coverage, there is no need to address this issue.

In order to determine the provisions of Section 38.1-381 on May 5, 1984, you must examine the provisions of Chapters 638 and 642 of the 1982 Acts of the Assembly in light of the statutory and constitutional process followed by the Virginia Legislature in enacting new laws. Prior to the 1982 session of the General Assembly, the provisions of section 38.1-381 did not obligate an insurance carrier to provide UI coverage. An insured only

had the opportunity to obtain, at an additional premium, higher UM limits up to the limits of his basic liability coverage. During the 1982 session, two bills were introduced to amend and reenact Section 38.1-381 as follows:

(1) House Bill 461 containing an amendment to Section 38.1-381(b) to require UM limits to be the same as the basic liability limits unless the insured rejects such additional UM coverage;

(2) House Bill 462 containing amendments to Section 38.1-381 (b) and (c) to obligate insurers to provide UI coverage where an insured obtains higher UM limits and to define an underinsured motor vehicle.

Both bills were passed and approved on April 12, 1982, with House Bill 462 (Chapter 638 of the 1982 Acts) becoming effective July 1, 1982, and House Bill 461 (Chapter 642 of the 1982 Acts) becoming effective on January 1, 1983. Both Acts amended Section 38.1-381 as it was in effect during the 1982 Session. Each act had a separate and distinct purpose. Section 12 of Article IV of the Constitution of Virginia prohibits any law from being amended with reference to its title and requires that the section amended shall be reenacted and published at length. Hence, each Act had to set forth at length the section as it existed during the 1982 Session showing the amendments adopted by that Act. I feel it would be unduly cumbersome and detrimental to the efficient operation of the General Assembly if each Act were required to contain all the amendments to a Code Section made by other Acts approved during the same legislative session. It certainly would be impossible to have all the amendments set forth in the Act containing the first amendment.

The same reasoning should apply even if the Acts become law on different dates. To accept Nationwide's argument, Chapter 642 of the 1982 acts which became effective January 1, 1983, would have had to have repealed those portions of Section 38.1-381 (b) and (c) amended by Chapter 638 of the 1982 Acts which became effective July 1, 1982. Such a repeal would have had to have been done by implication because there is no express provision for repeal in either Act. Repeal of a statute is not favored by the Courts and the presumption is always against the intention of repeal where express terms are not used. 17 Michie's Jurisprudence, *Statutes*, Section 98, and

cases cited in footnote 17, page 395. The two Acts are not repugnant, inconsistent or irreconcilable. Each Act addresses a completely different amendment to Section 38.1-381. This is not a case where a procedural statute has been revised and a portion of the former statute is omitted in the new revised statute, and, thereby, considered annulled or revoked, as in *Godlewski v. Gray*, 221 Va. 1092 (1981).

It is of further significance to note that Code Section 38.1-380.2 with the amendments adopted during the 1982 legislative session clearly concerns notice to insureds of UI coverage available before and after January 1, 1983. The Virginia Supreme Court in *Mitchell v. State Farm Insurance Company*, 227 Va. 452 (1984), recognized the statutory obligation for UI coverage adopted during the 1982 legislative session. 227 Va. at 457, n. 2.

Chapter 638 and 642 of the 1982 Acts must be read together to show the amendments effective July 1, 1982, and January 1, 1983. The Virginia Code Commission has the duty to arrange for the codification and incorporation into the Code of Virginia all the statutes enacted during a legislative session. Virginia Code Section 9-77.9. I feel that the Commission correctly set forth the provisions of Section 38.1-381 effective January 1, 1983, in the 1982 Supplement to Volume 6A of the Code of Virginia. When the General Assembly provided that the Act in Chapter 642 was to become effective January 1, 1983, it meant that the amendments of that Act to Section 38.1-381 were to become effective January 1, 1983, and did not mean to repeal the amendments in Chapter 638 effective July 1, 1982. The Chapter 638 amendments requiring UI coverage continued in full force and effect after January 1, 1983. In other words, where a particular Code section has been the subject of multiple amendments during one legislative session, you cannot determine the full text of the section after all the amendments by examining the last amending Act (whether last adopted or last effective). You must look at all the amending Acts approved during that particular session.

## II. *The Motion to Dismiss and Plea in Bar*
## *and the Question of the Statute of Limitations*

In order to resolve the issue of whether any claim which the plaintiff may assert against Nationwide should be dismissed, it must first be determined what is the exact status of Nationwide in the pending case.

In the first case filed May 5, 1986, the sole defendant is Tinney. There is no indication in the Court's file as to why Nationwide was served with process on May 20, 1987. The caption of the motion for judgment shall set forth the names of all the parties. Rule 3:3 of the Rules of the Supreme Court of Virginia. Nationwide was not listed as a defendant in the caption of the first case; and, in the second case, although there is a notation to serve Nationwide (without a statement as to why it is to be served), it is not listed in the caption as a defendant. Therefore, the plaintiff did not make Nationwide a party defendant, and she was not required to do so. See *McDaniel v. State Farm Mutual*, 205 Va. 815 (1965).

Except as may be otherwise noted herein, the cases cited all concern UM coverage. While they are not exactly on point, I feel they are very persuasive because the UI provisions in the Code parallel the UM provisions; and, despite Nationwide's assertion that in UI cases the underinsured motorist and the UI carrier should be treated separately, there is less likelihood of prejudice to the UI carrier because there will always be another insurance carrier involved in the case, i.e., the carrier for the underinsured motorist, and there will never be a "John Doe" situation as is often found in UM cases.

The Virginia Supreme Court cases from *Doe v. Brown*, 203 Va. 508 (1962), to *Truman v. Spivey*, 225 Va. 274 (1983), especially *Nationwide Mutual Insurance Company v. Finley*, 215 Va. 700 (1975), and *Rodgers v. Danko*, 204 Va. 140 (1963), and *Johnson v. G.M.C.*, 242 F. Supp. 778 (E.D. Va. 1965), and *Zurenda v. Holloman*, 616 F. Supp. 212 (E.D. Va. 1985), demonstrate a distinct judicial view, if not a precise holding, that a UM carrier is not a party to the tort action by the insured against the uninsured motorist. I am of the opinion that this is the better view, and it is equally applicable to the UI carrier.

Nationwide had a statutory obligation to provide payment for injury caused by the operation or use of an underinsured vehicle as defined in Code Section 38.1-381 as in effect on May 5, 1984. As a UI carrier, Nationwide has no duty to pay until it is determined that the insured is legally entitled to recover from the underinsured motorist in an amount over the insurance applicable to operation of the underinsured vehicle. *See Midwest Mutual Ins. Co. v. Aetna Cas. & Sur. Co.*, 216 Va. 926 (1976); *Nationwide Mutual Insurance Co. v. Finley*, 215 Va. 700 (1975). Virginia has never been a "direct action" state, and this is particularly true in the UM, now UM and UI statutes. Under Section 38.2-2206(F) (effective July 1, 1986), which is applicable to this case filed July 23, 1987, I am of the opinion that:

(1) the phrase "as though the insurer were a party defendant" merely qualifies the service of "a copy of the process"; i.e. the service of the copy of the process must be in one of the modes prescribed by law for service on a defendant in a civil action at law; and

(2) after such service, the insurer has the right, but is not required, to file pleadings and take other actions allowable by law in the name of the underinsured motorist or in its own name.

If the General Assembly has intended for the UI carrier to be a party to any action involving a potentially underinsured motorist, then it would have specifically so provided in the aforesaid Code Section along with a sanction for the UI carriers' not filing responsive pleadings or otherwise appearing. Finally, Nationwide's liability, if any, will be on a contract, not on the tort alleged in this case.

Because Tinney was properly served and before the court in a timely filed action at the time the non-suit order was entered, and this case was reinstituted in a timely manner after the non-suit, he cannot successfully plead the statute of limitations. Therefore, Nationwide cannot assert it on his behalf.

I am of the opinion that Nationwide is trying to avoid statutory or contract liability because of the delay in being served with a copy of process in this case. Former Code Section 38.1-381(e1), and present Code Section 38.2-2206(F), are silent on *when* the UI carrier

must be served. It is only required that the insurer be served. Nationwide may have a defense in a contract action because of the delay in being served, but that can only be raised in a suit upon the coverage afforded, not in this tort action.

In conclusion, I feel that the Plea in Bar and Motion to Dismiss are not well founded because Nationwide had a statutory obligation to provide UI coverage at the time of the accident, Nationwide is not a party to this tort action, and the relief sought in the Plea and Motion are applicable to a contract action based on the alleged UI coverage rather than the tort action in this case.

Let Mr. Vaughn prepare an order overruling the Plea in Bar and denying the Motion to Dismiss. Nationwide certainly can proceed and be involved in this case as allowed by Code Section 38.2-2206(F).