## CIRCUIT COURT OF THE CITY OF LYNCHBURG

State Farm Mutual Auto. Ins. Co.

v.

Rebeccah L. Miller et al.

July 8, 1988

By JUDGE WILLIAM W. SWEENEY

The issue is whether uninsured/underinsured motorist coverages in three separate policies available to the plaintiff may be "stacked" or combined to determine whether the defendant in the accident was an "underinsured motorist" pursuant to Virginia Code § 38.2-2206 as amended. Under the facts of this case, I rule that stacking is allowed.

It is important to this decision that this case involved three separate policies of insurance insuring three separate vehicles upon which separate premiums were paid. State Farm was the insurer on all three policies, but this is not a deciding factor. If it were, the effect would be to force the public to insure each vehicle with a separate company, a result which would hurt both insurers and insureds.

Another important factor in my decision is the legislative intent behind the underinsured motorist law statutes and amendments thereto. I believe that the intent was to provide additional protection and coverage not to limit it. I think the Legislature intended to add to the benefits conferred by the uninsured motorist statute and to prevent inequities therein where a plaintiff could be better off if the defendant had no insurance than if the defendant had minimum limits. This general view seems to be shared by Justice Poff in the recent case of *Nationwide v. Scott*

(decided January 15, 1988, Rec. No. 850389) where he stated:

> As Nationwide construes the statute, the General Assembly intended the 1982 amendments to limit an injured claimant's total recovery from all insurance sources to the amount of coverage fixed in the underinsured motorist endorsement. We disagree. Given the language employed, we believe the legislative purpose was to increase the total protection afforded by insurance to claimants injured or damaged by negligent motorists
> . . .

Briefly stated, the facts were as follows. Decedent was killed in a motor vehicle collision with defendant Cornelius. Cornelius was the named insured of a liability insurance policy issued by defendant, Selective Insurance Co., and providing coverage of $100,000. At the time of the accident, the decedent was insured under three uninsured/underinsured motorist policies. Two of the policies were issued to the decedent as the named insured, one policy insuring the accident vehicle and the other policy covering another vehicle. The other policy insured the decedent's wife's vehicle. He qualified as an insured thereunder. Each of the three policies provided coverage of $100,000 and was issued by State Farm Mutual Automobile Insurance Co. If stacking is not allowed, decedent (plaintiff) is limited to $100,000 recovery in the accident. If stacking is allowed, his estate would be entitled to an additional $200,000 in uninsured/underinsured coverage provided he secured a judgment of at least $300,000.

No useful purpose would be served by my reviewing all the cases decided under § 38.2-2206 and its predecessor. This has been adequately done in the briefs. The cases, with the possible exception of *Mitchell v. State Farm*, 227 Va. 452, 318 S.E.2d 288 (1984), seem to be consistent. As the footnote in that case cautions, however, the case was decided prior to the 1982 amendment to Section 38.2-2206. If *intra-policy stacking* is involved

(several vehicles insured under one policy), stacking is not allowed where the policy language clearly prohibits it. If the facts involve *inter-policy stacking* (separate policies) such stacking has been allowed regardless of the language in the different policies. In a comprehensive opinion, a Federal court in Norfolk in denying stacking in an *intra-policy* situation stated:

> This brings us to the interpretation of Virginia Code § 38.1-381, which is applicable to the instant case. The statute reads in part: A motor vehicle is underinsured when, and to the extent that, the total amount of . . . coverage . . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of such vehicle. Va. Code § 38.1-381(c). Plaintiff contends that the word "total" acts to allow stacking of uninsured motorists coverages contained in a single policy, despite policy language to the contrary. This Court, however, is not persuaded by plaintiff's argument. Nothing in the wording of the statute, which was enacted in 1982, indicates that the legislature intended to overrule the line of Virginia cases, including *Goodville* and *Mitchell*, which supports defendant's argument against stacking in the instant case. *It is more likely that the word "total" refers to combining coverages from different sources or policies, as exemplified by the Herbecq and Turnage cases discussed above. See Billings v. State Farm*, (E.D. Va. 2/25/88) No. 87-578-N) (Emphasis supplied).

To my knowledge, circuit judges who have thus far ruled in inter-policy cases have allowed stacking under what they believed to be the intent of the statutes. *See Herbecq* and *Turnage* opinions cited in briefs.

There is logic to the trend of these opinions. An insurance policy is simply a contract between the company

and its insured. The clear language in the contract should be binding on both parties. Ambiguous language is construed against the company who chose the language. This is as it should be. But where several different policies or contracts are involved covering different operators and owners as we have in this case, the insureds should get what they paid for, and no one contract should control all the others. If this were not true, the rights of vehicle owners to choose separate companies would be restricted and the premium dollar paid for additional underinsured coverage under separate policies on separate vehicles would be of little benefit. A broad analogy would be the rights to collect hospital benefits on different health insurance policies.

A background review of the Virginia uninsured and underinsured statutes and the law in other jurisdictions might be helpful.[3]

According to Va. Code Ann. § 38.2-2206(B), an "uninsured motor vehicle" includes those motor vehicles with liability insurance of an amount less than the amount statutorily mandated:

> *"Uninsured motor vehicle"* means a motor vehicle for which (i) there is no bodily injury liability insurance and property damage liability insurance in the amounts specified by § 46.1-1(8), (ii) there is such insurance but the insurer writing the insurance denies coverage for any reason whatsoever, including failure or refusal of the insured to cooperate with the insurer, (iii) there is no bond or deposit of money or securities in lieu of such insurance, or (iv) the owner of the motor vehicle has not qualified as a self-insurer under the provisions of § 46.1-395. A motor vehicle shall be deemed uninsured if its owner or operator is unknown.

The amount of liability insurance required by statute is $25,000 for bodily injury or death per person, $50,000

[3] Research assistance from Court Legal Research Assistance Program is acknowledged.

for bodily injury or death per accident, and $10,000 for property damage per accident (25/50/10). *See* Va. Code Ann. § 46.1-1(8) ("financial responsibility" definition). At least with regard to personal injury liability coverage, it appears that the defendant Cornelius was not the driver of an "uninsured motor vehicle" under these statutes since the defendant carried $100,000 worth of liability insurance. *See generally* W. Ritz, Virginia Automobile Liability Insurance §§ 2-8, 2-13, 6-1 et seq. (1983) [hereinafter Ritz, Virginia] (discussing uninsured motorist coverage).

The stacking of uninsured motorist coverage has been well-settled in Virginia case law. Inter-policy stacking, aggregating applicable coverages provided in separate policies, is mandated by Virginia statute. *See Bryant v. State Farm Mutual Auto. Ins. Co.*, 205 Va. 897, 901-02, 140 S.E.2d 817 (1965) (finding anti-stacking language in insurance contract invalid as contrary to statutory requirement that insurer pay insured "all sums" legally entitled to recover from uninsured motorist). The fact that the injured party is insured by the same insurance company as a passenger under one policy and as the named insured under another policy does not appear to bar inter-policy stacking. *Id.* at 898. *See generally* 1 Schermer, Automobile Liability Insurance § 31.04 (2d ed. 1987) [hereinafter Schermer, Auto].

By contrast, intra-policy stacking, aggregating coverages of several motor vehicles within one policy, is not mandated by Virginia statute. *See generally id.* at sect. 31.01 (distinguishing intra- and inter-policy stacking). Case law indicates, however, that where separate insurance premiums are paid, intra-policy stacking is permissible "unless clear and unambiguous language exists on the face of the policy to prevent such multiple coverage." *Goodville Mut. Casualty Co. v. Borror*, 221 Va. 967, 970, 275 S.E.2d 625 (1981). *Compare id.* at 971 (phrase, "regardless of the number of . . . . motor vehicles" covered under policy the limit of liability is . . . , found to bar stacking clearly and unambiguously) with *Lipscombe v. Security Ins. Co.*, 213 Va. 81, 83-84, 189 S.E.2d 320 (1972) (clause, "when two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each," found ambiguous and, therefore, no bar to stacking). Such intro-policy stacking is limited in application, however,

to Class 1 insureds, the named insured and any spouse or relative; automobile guests cannot stack multiple coverages under a single policy issued to their host. *See Cunningham v. Insurance Co. of N. Am.*, 213 Va. 72, 77-79, 189 S.E.2d 832 (1972) (passenger cannot, but named insured can, pyramid motorist coverage on vehicles covered by single policy). *See generally* Ritz, *Virginia, supra*, Section 17-6 (1983) (stacking of uninsured motorist coverages).

As to underinsured motor vehicles, Va. Code Ann. Section 38.2-2202 requires the motor vehicle insurer to notify the insured that he/she may purchase additional coverage above that required by law (25/50/10) to protect against "a loss caused by an uninsured motorist." This additional insurance is sometimes called underinsured motorist insurance. Virginia Code Ann. § 38.2-2206(A) further provides that underinsured motorist policies must "obligate the insurer to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle to the extent the vehicle is underinsured, as defined in subsection B of this section." Subsection B defines "underinsured motor vehicle":

> A motor vehicle is "underinsured" when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle, including all bonds or deposits of money or securities made pursuant to Article 6 (§ 46.1-467 et seq.) of Chapter 6 of Title 46.1, is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.

Note that the statutory definition of "underinsured motor vehicle," as first enacted in 1982, was substantially similar to the existing definition in Va. Code Ann. Section 38.2-2206(B). *See* 1982 Va. Acts c. 638 (Va. Code Ann. Section 38.1-381(c)). The legislature adopted the present form of the definition in 1986. *See* 1986 Va. Acts c. 562 (Va. Code Ann. § 38.2-2206). The legislative history associated with these statutes as documented in House and Senate reports is insignificant for the purposes of this opinion.

Thus, a motor vehicle may be insured adequately under Virginia law (25/50/10 minimum) but still be "underinsured" under Va. Code Ann. § 38.2-2206(B) if the accident victim has more uninsured motorist coverage than the tortfeasor has liability coverage. *See generally* Ritz, *Virginia, supra*, § 2-3 (1984 Supp.) (discussing new underinsured motorist statute); *id.* at § 2-4 (1983) (illustrating underinsured motorist coverage). This definition of underinsured motor vehicle raises the issue of the presented case, whether uninsured/underinsured motorist policies may be "stacked" to determine the status of a motor vehicle as underinsured.

The 1982 addition to the uninsured motorist statute, i.e., the reference to underinsured motor vehicles, occurred during the pendency of Virginia's first "stacking" case involving an underinsured motor vehicle. In *Mitchell v. State Farm Mutual Automobile Insurance Co.*, 227 Va. 452, 318 S.E.2d 288 (1984), the Supreme Court of Virginia applied the following definition of "underinsured motor vehicle" prescribed by a state administrative order and contained in the *Mitchell* insurance policy, not the statutory definition discussed above. *Id.* at 457 n. 2.

> "underinsured motor vehicle" means a motor vehicle with respect to the ownership, maintenance or use of which, as respects damages because of bodily injury or property damage or both, the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies respectively applicable to bodily injury or property damage at the time of the accident is less than the applicable limits of liability under this insurance. *Id.* at 454. *Compare id. with* Va. Code Ann. Section 38.2-2206(B) ("total amount of uninsured motorist coverage" . . .).

Relying on this definition, the court held that absent statutory guidance on the issue, the propriety of stacking was governed by the terms of the insurance contracts. *Id.* at 458. The *Mitchell* court concluded that the emphasized language above clearly and unambiguously prohibited the inter-policy stacking of uninsured motorist coverages

to determine whether the tortfeasor's motor vehicle was underinsured. *Id.* at 459. *But see* fn. 2, 227 Va. 452 at 457.

The Supreme Court of Virginia has not determined whether uninsured or underinsured motorist coverages may be stacked among or within policies to determine "underinsured" status under the 1982 amendment to the uninsured motorist statute. The Attorney General of Virginia has not rendered any opinion on the issue. At least two Virginia circuit courts, however, have interpreted former Va. Code Ann. § 38.1-381(c), now Va. Code Ann. Section 38.2-2206(B), to require the stacking of uninsured motorist coverages when provided by separate policies as in the case at bar.

First, in *Integrity Ins. Co. v. Turnage*, No. 85C1208 (Cir. Ct. Henrico Co. filed Apr. 2, 1986), the tortfeasor had $25,000 liability coverage. *Id.* at 1. The accident victim (defendant) was insured under two policies issued by different insurers, each providing $25,000 coverage. *Id.* at 1-2. Under one policy the defendant was the named insured, and under the other policy the defendant was insured as the lessee (permissive user) of the accident vehicle. *Id.* The defendant in *Turnage* argued that according to Virginia statute, the defendant's two policy limits should be aggregated (to equal $50,000) to find "the total amount" of coverage by which to compare the tortfeasor's liability coverage. *Id.* at 8. The court agreed that the two coverages should be combined to ascertain whether, and to what extent, the defendant was underinsured. *Id.* at 10 (page number added) (finding defendant underinsured by $25,000).

Second, the Spotsylvania County Circuit Court, in *Herbecq v. Virginia Farm Bureau Ins. Co.* (Cir. Ct. Spotsylvania Co. June 17, 1987), expressly found Va. Code Ann. Section 38.1-381(c), now Va. Code Ann. § 38.2-2206(B), to require the stacking of uninsured motorist coverages to determine the "total amount" of coverage. *Id.* at 3. The court stated that to find otherwise "would be to obliterate the clear meaning of the words 'total amount . . .' in the statute." *Id.* In *Herbecq*, the plaintiff victim was

insured as a permissive user (step-mother) of the accident vehicle under one policy and as a household member under another policy. *Id.* at 2. The policies were issued by different insurers. *Id. See generally* 8C Appleman, Insurance Law and Practice § 5071.45 (1981) (discussing stacking of uninsured motorist coverage to determine "underinsured" status). Annotation, *Combining or "Stacking" Uninsured Motorist Coverages Provided in Separate Policies Issued by Same Insurer to Same Insured*, 25 A.L.R.4th § 6 (1983) (discussing cases involving underinsured motorist).

Where *Turnage* and *Herbecq* concerned the inter-policy stacking of uninsured motorist coverages, one federal district court in Virginia has construed former Va. Code Ann. § 38.1-381(c), now § 38.2-2206(B), in the context of intra-policy stacking of underinsured motorist coverage. *See Billings v. State Farm Mut. Auto Ins. Co.*, No. 87-578-N at 1-2 (E.D. Va. Feb. 25, 1988) (claimant's coverage in amount of $50,000 per person and $100,000 per accident referred to as "uninsured" motorist coverage when in fact coverage was partly "underinsured" motorist coverage to extent amount exceeded 25/50/10 minimum). In *Billings v. State Farm Mutual Automobile Insurance Co., supra,* the court distinguished *Herbecq* and *Turnage, supra,* on the ground that the cases dealt with "combining coverages provided in completely different policies and from different sources, while the case at bar involved coverages on three vehicles covered by a single policy." *Id.* at 4. The *Billings* court suggested that the "total amount . . ." language in the statute referred to inter-policy stacking, i.e., "combining coverages from different sources or policies." *Id.* The court concluded that stacking was not statutorily mandated in the given case and that the insurance contract clearly and unambiguously prohibited stacking. *Id.* at 10-11.

Reading the three Virginia cases together, it appears that Va. Code Ann. § 38.2-2206(B) may require the three underinsured motorist coverages in the given case to be aggregated to determine the "underinsured" status of the tortfeasor's motor vehicle. All three cases suggest that the "total amount" language of the statute requires inter-policy stacking as in the presented case. *Billings* indicates that the statute may apply to underinsured motor vehicle coverage, like that in the given case, though the statute

specifically refers to the "total amount of uninsured motorist coverage." *Billings* also shows that the statute appropriately applies where "combining coverages from different sources or policies" as in *Turnage* and *Herbecq*. The coverages in the presented case were provided in separate policies, but the policies were issued by the same source. In this regard, note that *Bryant, supra,* held that Virginia statute required inter-policy stacking of uninsured motorist coverages though the same insurance company issued both policies. *Bryant,* 205 Va. 897. Finally, the fact that the decedent in the presented case was insured indirectly and, in part, as the spouse (relative, or household member) of a named insured does not seem to prohibit the stacking of underinsured motorist coverages. *Cf. Turnage, supra,* at 1-2 (insured partly as permissive user of vehicle); *Herbecq, supra,* at 2 (insured as permissive user and household member). *See generally* Schermer, *Auto, supra,* § 35.07 ("statutory language in most cases [including Virginia] does not clearly rule out or permit" stacking of claimant's coverages to determine "underinsured" status).

In response to inadequate uninsured motorist insurance, most states have established statutory requirements for underinsured motorist coverage. *See* 2 Widiss, Uninsured and Underinsured Motorist Insurance §§ 31.4, 31.5 (2d ed. 1987) [hereinafter Widiss, *Uninsured*]. *See generally* Schermer, *Auto, supra,* § 35.01 (discussing background of underinsured motorist legislation). Underinsured motorist statutes, however, vary widely across states. The following case law from other jurisdictions construing such statutes, therefore, should be analyzed carefully for any significant variation in statutory language. *See id.* at § 35.02 (discussing various states' statutory language); Widiss, *Uninsured, supra,* § 35.2 (categorizing similar underinsured motorist statutes).

It appears that no other state has adopted the definition of "underinsured motor vehicle" definition found in Va. Code Ann. § 38.2-2206(B). While states have not used the significant "total amount . . ." statutory language, some states, like Virginia, have compared tortfeasor liability insurance to claimant uninsured motorist coverage to determine whether the tortfeasor or the tortfeasor's motor vehicle is "underinsured." *See* Widiss, *Underinsured, supra,* § 35.2 at 42-45. Generally, these other statutes

provide that liability coverage must be less than the limits of the claimant's uninsured motor vehicle coverage. *Id.*

In the jurisdictions with statutes focusing on "the limit" of claimant's "uninsured" motor vehicle coverage, some courts have permitted inter-policy stacking of underinsured motorist coverages for various reasons. *See Allstate Ins. Co. v. Ferrante*, 201 Conn. 478, 518 A.2d 373, 375-76 (1986) (stating in dictum, that uninsured and underinsured automobile insurance coverages may be stacked within or among policies under statute, referring to "the applicable limits of liability under the uninsured motorist . . . policy," despite anti-stacking language in insurance contract), *Kenilworth Ins. Cl. v. Drake*, 396 So. 2d 836, 837-39 (Fla. Dist. Ct. App. 1981) (uninsured/underinsured motorist coverages provided by different carriers for separately owned vehicles may be stacked despite general statutory prohibition of stacking): *Morro v. Farmer's Ins. Group*, 748 P.2d 512, 514-15 (N.M. 1988) ("insured is entitled to stack the underinsured motorist policies for which separate premiums have been paid: to different carriers, whether the insured is a Class 1 or Class 2 insured).

These cases, thus, suggest that a court may construe statutory definitions of "underinsured motor vehicle" to require the stacking of underinsured motorist coverages or interpret general statutory language to allow stacking under certain circumstances. Persuasive factors for stacking include: separate policies with separate premiums, different insurers, and different motor vehicles with different owners. In the present case, all of these circumstances exist except for the fact of different insurance carriers. Other courts in jurisdictions with statutes, defining "underinsured" by comparing liability coverage with the limits of claimant's uninsured motorist coverage, have disallowed inter-policy stacking of underinsured motorist coverages.

It seems that the case law from other jurisdictions does not construe statutory language exactly like Va. Code Ann. § 38.2-2206(B). The decisions nevertheless, are helpful in highlighting persuasive circumstances or policy reasons to consider in determining the propriety of stacking where legislative intent is unclear as in the presented case. Especially significant is the opinions' suggestion that

whether a policy is labelled "uninsured" or "underinsured" does not, alone, determine whether the policy coverage may be stacked to determine "underinsured" status even where the statutory definition of "underinsured" refers to uninsured coverage limits.